Jesus M. OLVERA

v.

UNITED STATES of America.

No. 15260.

United States Court of Appeals
Fifth Circuit.

June 17, 1955.

Hayden C. Covington, Brooklyn, N. Y.,
Tom S. Williams, Houston, Tex., for appellant.

C. Anthony Friloux, Jr., Asst. U. S.
Atty., Malcolm R. Wilkey, U. S. Atty.,
Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge,
and TUTTLE and CAMERON, Circuit
Judges.

HUTCHESON, Chief Judge.

Indicted and convicted for refusing to
perform, as a conscientious objector,
civilian work in the Texas State Hospital
at Austin which he had been ordered by
his local board to do, defendant, appealing from the sentence of two years in the
penitentiary imposed upon him for disobeying the order, is here putting forward two grounds for the reversal of the
judgment.

The first ground is that appellant was
deprived of due process in that the board
wrongfully denied him a hearing upon
his request to reopen his classification
and reclassify him as a full time minister,
and that because of its failure to accord
him such procedural due process, its order, for disobedience of which he was

convicted and sentenced, was invalid, and his sentence may not stand.

His second ground is: that, if he was correctly and legally classified as a conscientious objector and placed in Class 1–O, he was liable only to perform civilian work contributing to the national health, safety, etc., and was not liable to do work for the State of Texas; and that the imposition of such work was not only beyond the power of the board but was unconstitutional, subjecting him to involuntary servitude in violation of the Fifth and Thirteenth Amendments.

Agreeing, as we do, with appellant's first ground, we find it unnecessary to decide or even consider the second ground.

Tried to the court on a jury waiver, the case was submitted on an agreed statement of facts consisting of the record of the local board and stipulations as to matters occurring before the board but not reduced to writing there. At the conclusion of the hearing the district judge, filing a memorandum opinion [1]

giving his reasons therefor, found defendant guilty as charged and sentenced him to serve two years in the penitentiary.

In our opinion, in proceeding as he did to undertake to decide the merits of the applicant's claim for reclassification, which the board had declined to do, the court took upon itself a function delegated not to it but to the board, and convicted defendant upon what the board had done not rightfully after opening the classification but wrongfully after refusing to open it.

■■ While at the time the district judge wrote his opinion deciding this case, there may have been warrant in the decided cases [2] for his decision, we are in no doubt that the decisions of the Supreme Court, handed down on March 14, 1955,[3] taken together, have made it clear that this warrant no longer exists. Indeed the principle finally established by the Supreme Court, in its struggle to reconcile [4] the fundamental principles of liberty and due process with the failure

1. Summing up the facts showing: defendant's registration with the local board at San Diego, Texas, on Dec. 12, 1949; the filling out of his questionnaire in December, 1950, in which he claimed that he was a minister of religion doing some secular work, and, at the same time, he requested the board to send him, and on receipt of it, filled out the special form for conscientious objectors; the board's denial on Feb. 8, 1951, of his claim for ministerial exemption and its classification of him first at 1–A–O for non-combatant military duty, later as 1–O, conscientious objector liable for civilian work; the denial by the appeal board of his ministerial exemption claim, his reclassification as 1–O, followed by an order from the local board for physical examination, and his reporting therefor on Sept. 19, 1952 and acceptance thereat; that thereafter on Oct. 6, 1952, he filed with the board a request for reopening and reconsidering his classification, as a minister of religion; that he appeared before the board and "it announced at the conclusion of the hearing that it was not mandatory on it to reopen the classification" and that "they declined to do so;" that on April 15, 1953, it ordered him to report to the Austin State Hospital for civilian duties; he failed and

refused to submit himself, and this prosecution followed; the district judge, though the board had refused to do so, proceeded in his opinion to canvass for himself the circumstances and facts offered by the applicant for reopening and to determine for himself, not whether the board was wrong in refusing to reopen but whether in effect, if it had reopened and reconsidered the classification, it should and would have refused the classification asked.

2. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; U. S. v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417; and even Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132.

3. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403; Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397; Gonzales v. United States, 348 U.S. 407, 75 S. Ct. 409; Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392.

4. Cf. the majority and dissenting opinions in Falbo v. U. S., U. S. v. Nugent and Dickinson v. U. S., note 2, supra.

of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq., to make specific provision for judicial review of board action and for a jury trial on the controlling issue makes it certain that this is so. This principle, that when every requirement of due process has been observed by the board, its fact decisions, unless wholly unsupported, are not subject to review, makes it certain that this is so. Under this principle, it is of the essence of the validity of board orders and of the crime of disobeying them that all procedural requirements be strictly and faithfully followed, and that a showing of failure to follow them with such strictness and fidelity will invalidate the order of the board and a conviction based thereon.

The reaction against and retreat from the rigors of the Falbo decision, that board orders on which conviction of crime and the deprivation of liberty are based, convictions in effect by administrative fiat, are unreviewable, was to some extent begun in the earlier decisions. It remained however for these latest cases to bring the reaction almost full circle around by pointing out the essentiality to due process of the recognition of principle that if the deprivation of liberty is to be in effect accomplished by the action, in the stress and pressure of a war effort, of administrative bodies of laymen, strict compliance with every procedural requirement is essential to the board's jurisdiction and the validity of its orders. So strongly does this stand

out in the four cases just decided, that they may be said to be a new Magna Charta of liberties in conscientious objector cases, a turning back from conviction by administrative absolutism to conviction only in accordance with the tradition of due process and the law of the land for which the Milligan case stands in our jurisprudence like a beacon set upon a hill:

"* * * The decision of this question does not depend on argument or judicial precedents, numerous and highly illustrative as they are. These precedents inform us of the extent of the struggle to preserve liberty and to relieve those in civil life from military trials. The founders of our government were familiar with the history of that struggle; and secured in a written constitution every right which the people had wrested from power during a contest of ages. By that Constitution and the laws authorized by it this question must be determined. The provisions of that instrument on the administration of criminal justice are too plain and direct, to leave room for misconstruction or doubt of their true meaning. Those applicable to this case are found in that clause of the original Constitution which says, 'That the trial of all crime, except in case of impeachment, shall be by jury;' and in the fourth and sixth articles of the amendments. * * *"[5] Ex parte

5. "Time has proven the discernment of our ancestors; for even these provisions, expressed in such plain English words, that it would seem the ingenuity of man could not evade them, are now, after the lapse of more than seventy years, sought to be avoided. Those great and good men foresaw that troublous times would arise, when rulers and people would become restive under restraint, and seek by sharp and decisive measures to accomplish ends deemed just and proper; and that the principles of constitutional liberty would be in peril, unless established by irrepealable law. The history of the world had taught them that what was done in the past might be attempted in the future. The Constitution

of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism, but the theory of necessity on which it is based is false; for the government, within the Constitution, has all the powers granted to it, which are necessary to preserve its existence; * * *" Ex parte Milligan, supra, 4 Wall. at pages 120–121.

Milligan, 4 Wall. 2, 71 U.S. 2, at page 119, 18 L.Ed. 281.

When all is said and done, what is in question in these and other like cases is that reconciliation of law with liberty, which distinguishes a government of laws from one of men. Therefore, in construing and applying the Selective Training and Service Act in conscientious objector cases, these things must be kept in mind: (1) the statute under construction is a statute of religious liberty;[6] (2) the blood of the martyrs is the seed of the church; and (3) liberty and law must go hand in hand, neither must outrun the other.

■ In the light of these reflections and of the recent decisions of the Supreme Court, including those of the district and circuit courts following their teachings, we think it clear: that the action of the board in this case, in refusing, not for the reason stated in Witmer's case that the showing made did not entitle Witmer to a reopening, but for the stated reason, because reopening was not mandatory—in short "we won't reopen because we don't have to," the request of appellant to reopen and reconsider his application as a full time minister, was arbitrary and unreasonable and ousted it of its jurisdiction to proceed further against him until his request was granted or, for a proper reason, refused; and that the imposition by the court of a sentence of imprisonment upon him for disobedience of this order deprived him of his liberty without due process and in violation of law.

For another reason, this case is distinguishable from Witmer's case, in which the Court held that where in reality the local board *does* hear and consider the new contention but declines to make the formal entry of a "reopening" and "reclassification" while notifying the registrant that his 1–A classification would be continued, and "no prejudice is claimed", there was no denial of a substantial right of the registrant. In the Witmer case, the action of the local board was reviewed by the appeal board to which the file was sent. Here the failure to rule formally on the request to reopen and reclassify denied Olvera of his right to an appeal from this adverse action. In fact Olvera was not even notified of his retention in Class 1–A except that the local board "processed him for induction".

In concluding this opinion, we think it proper to say that we all know, and of what all know the courts may and do take judicial knowledge, that in times of great national stress and danger, particularly in time of war when feelings run high and the maxim, "Salus populi suprema lex", comes readily to the mind and tongue, it is exceedingly difficult for even those who are the most devoted to the reign of law, to take and hold to a consistently impartial and unprejudiced approach in cases of this kind. It is particularly difficult for laymen, charged with the duty of raising an army by draft, to avoid translating into action what certainly seems a basically just feeling that a few should not be permitted, at the expense of the many, to enjoy the blessings of liberty without paying their share of its price. Natural and understandable as these feelings are, however, it is for the congress, and not for the boards and the judges, to take them into account except as sharpeners of their consciences and, therefore, of their consciousness of the difficult and delicate task imposed upon them to do justice under the law, at all times and under all circumstances in cases of this kind, to those whose beliefs some at least of the triers do not approve of and some cannot or will not understand.

6. In Williams v. United States, 5 Cir., 216 F.2d 350, 352, Judge Rives of this court clearly perceived the truth of this and thus stated it:
"Congress in its wisdom considered it more essential to respect a man's religious belief than to force him to serve in the armed forces. The draft boards and the Courts are bound to carry out that policy."

Finally, there is something alien to our sense of justice and right that the order of an administrative body of laymen, the factual basis of which cannot be inquired into by a court or jury, in effect, by depriving him of a jury trial on the question of his guilt or innocence, makes a felon of a civilian and deprives him of his liberty.

As long, therefore, as the law stands as it is now written and construed, it is and will continue to be of the first importance that the predicate for such conviction without trial by jury be at the least laid with the utmost fidelity not only to every substantial safeguard and right which the law has accorded the objector but also to the procedural requirements compliance with which is essential to the validity of board orders.

The judgment is reversed and the cause is remanded with directions to enter a judgment of acquittal.