**Alva Eugene BLALOCK, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 7435.**

United States Court of Appeals Fourth Circuit.

Argued June 3, 1957.

Decided Aug. 7, 1957.

Hayden C. Covington, Brooklyn, N. Y. (Richard M. Welling, Charlotte, N. C., on brief), for appellant.

J. M. Baley, Jr., U. S. Atty., Marshall, N. C. (Hugh E. Monteith, Asst. U. S. Atty., Sylva, N. C., on brief), for appellee.

Before SOPER, SOBELOFF, and HAYNSWORTH, Circuit Judges.

SOBELOFF, Circuit Judge.

This appeal is from a conviction under an indictment charging a violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix,[1] by refusing

1. The indictment is based on Section 462, the penalty section; but the procedural provisions to be considered are in Section 456(j), 65 Stat. 83; and as we shall have occasion to consider several aspects of this section, it is here set forth in full:

"(j) Nothing contained in this title [sections 451–470 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title [said sections], be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) [section 454(b) of this Appendix] such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title [section 462 of this Appendix], to have knowingly failed or neglected to perform a duty required of him under this title [sections 451–454 and 455–471 of this Appendix]. Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. The Department of Justice shall, after such hearing, if the objections are found to be sustained, recommend to the appeal board that (1) if the objector is inducted into the armed forces under this title [said sections], he shall be assigned to noncombatant service as defined by the President, or (2) if the objector is found to be conscientiously opposed to participation in such noncombatant service, he shall in lieu of such induction be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) [section 454(b) of this Appendix] such civilian work contributing

to submit to induction into the armed forces for non-combatant duty. At his trial, the defendant, Alva Eugene Blalock, challenged the appeal board's denial of his claim for a I–O conscientious objector classification, which would have immunized him from military service, both combatant and non-combatant. He also asserted that certain procedural rights were denied him in the course of the administrative process. These contentions are repeated here.

The appellant, a Jehovah's Witness, claims that, as a member of that sect and by personal conviction, he is conscientiously opposed to war and service in the armed forces. Since his original registration with Local Board No. 85 in Albemarle, North Carolina, in March, 1951, his relationship with the Selective Service System has been extensive. He has had a number of personal appearances before the local board, several appeals to the appeal board, and has undergone at least two F.B.I. investigations and hearings before Justice Department examiners.

In answering the questionnaire submitted by the local board, the appellant claimed exemption as an ordained minister of Jehovah's Witnesses and stated his objections to military service on grounds of conscience. He thereafter filed a special conscientious objector form and asserted, in addition, that he could not accept any appointment to do civilian work in the national interest, as is required by law of those exempted as conscientious objectors. He insisted that to obey this requirement would interfere with his service to God.

The board nevertheless classified him I–A. A subsequent personal appearance in February, 1952, however, resulted in a III–A classification, since his mother, sister, and two brothers were dependent upon him for support.

The following year, in May, 1953, Blalock was reclassified I–A by the local board.[2] Upon appeal to the appeal board, it made a preliminary determination that he was not entitled to a I–O conscientious objector claim, and in accordance with the required procedure, his file was forwarded to the Department of Justice for investigation, hearing, and recommendation. Section 6(j), 50 U.S.C.A. Appendix, § 456(j), 65 Stat. 83. As a result of these procedures, the Department recommended that the I–O classification be granted. The résumé of evidence, forwarded to the appeal board by the Department, pointed out favorable evidence gleaned from the investigation. The hearing examiner had been impressed with Blalock's demeanor, and concluded that he was devoutly religious and sincere in his opposition to war.

to the maintenance of the national health, safety, or interest as the local board may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title [section 462 of this Appendix], to have knowingly failed or neglected to perform a duty required of him under this title [sections 451–454 and 455–471 of this Appendix]. If after such hearing the Department of Justice finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal from the local board. Each person whose claim for exemption from combatant training and service because of conscientious objections is sustained shall be listed by the local board on a register of conscientious objectors. As amended June 19, 1951, c. 144, Title I, § 1(*l*–q), 65 Stat. 83; June 30, 1955, c. 250, Title I, § 101, 69 Stat. 223; Aug. 9, 1955, c. 665, § 3(b)–(d), 69 Stat. 603."

2. The board thought the hardship conditions no longer existed to justify continuation of the III–A classification. This was apparently based upon various circumstances, such as that the registrant's mother was drawing Social Security benefits, his younger brothers and sisters had become old enough to assume part of the family's economic burden, assistance from older brothers and sisters was available to the family, and the loss of direct support from the registrant would be partly off-set by army allotments.

With this recommendation before it, the appeal board granted the appellant a I–O classification, which exempted him from all military duty, both combatant and non-combatant. However, he did thereby become subject to assignment to civilian work in the national interest. Sec. 6(j).

When, later, Blalock refused to select between several alternatives of civilian work offered him, a meeting was called at which Colonel Mathis, a State Selective Service Officer, and the local board sought to reach an agreement with Blalock. At this interview, Mathis asked the registrant if he would work in a defense plant, and Blalock's reply was that he would, because the use made of the products "isn't my responsibility" and "is no concern of mine." In view of this admission, coupled with a declared intention not to perform any civilian work in the national interest if so ordered by the board, the State Director reopened the case. The local board reclassified him I–A, and again the case was appealed and referred by the appeal board to the Department of Justice for investigation, hearing, and recommendation.

At the departmental hearing which followed, the examiner asked a question similar to that propounded at the earlier draft board interview pertaining to Blalock's willingness to work in a defense plant. He again answered that his religious beliefs would not prevent him from engaging in such work if it were necessary. Although the hearing officer recommended that the I–O claim be sustained, the Special Assistant to the Attorney General, on review of the file, recommended denial of the claim in view of the registrant's statement that he would work in a defense plant. The recommendation, however, suggested that he be given a I–AO classification, which would leave him eligible for military service but only in a non-combatant capacity.

Afforded an opportunity to reply to the Department's recommendation, Blalock altered his position regarding defense work, stating that he would not engage in such work if the materials were to be used in war. Thereupon, the appeal board, as the Department had suggested, classified appellant I–AO, rendering him subject to non-combatant military service. On being ordered to report, he reported, but refused to submit to induction; and this criminal proceeding followed.

On at least several occasions during his draft board history, appellant made known his opposition to the political, material wars of men and nations, although he stated that he would kill in defense of himself and his brothers as authorized by God. In voicing this opposition, to the administrative officials before whom he appeared, he sought to persuade them that he could not, consistently with his religious views, maintain any position but a neutral one regarding earthly conflicts.

The success or failure of such attempted persuasions must, of course, in the last analysis, rest upon the board's judgment of the registrant's sincerity. Human experience has devised no precise gauge for appraising a subjective belief lodged in the mind and heart of the person himself and never truly known by others. Sincerity can be judged only from the individual's demeanor, the consistency of his statements, appraisals by persons to whom he is known, and other immeasurable factors which may be deemed significant by some men but not by others.

Not only could the appeal board consider the decision of the local board which had had an opportunity to view the registrant's demeanor, but it could determine and evaluate any incongruity in his condemnation of war on the one hand, and his willingness, on the other, to do defense work with avowed indifference to the destructive use of the products of his labor. Had Blalock actually worked in a defense plant, that circumstance would have been a pertinent one in evaluating the conscientiousness of his objection to non-combatant duty. Jones v. United States, 4 Cir., 241 F.2d 704. His willingness to do so, though

he has not in fact done so, is also pertinent. See Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; See, also, Meredith v. United States, 4 Cir., 247 F.2d 622. The Board could consider, in addition, that his attitude regarding defense work was later modified when the adverse effect of his admission became known to him.

The District Judge also pointed out certain variations in the several versions offered by the defendant of his medical history, which could have been interpreted by the fact finders as reflecting on his over all sincerity.

In a prosecution for refusing to submit to induction, the scope of judicial inquiry into the administrative proceedings leading to the defendant's classification is very limited. The range of review is the narrowest known to the law. Campbell v. United States, 4 Cir., 221 F.2d 454. The "clearly erroneous" rule applied in equity appeals has no place here, nor even the "substantial evidence" rule of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Congress gave the courts no general authority of revision over draft board proceedings, and we have authority to reverse only if there is a denial of basic procedural fairness or if the conclusion of the board is without any basis in fact. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Goff v. U. S., 4 Cir., 135 F.2d 610.

We cannot say that upon the record before the board there was no factual basis for the classification.

II

A ground for reversal, procedural in character, is also pressed. It relates to the production of the F.B.I. report on its investigation of the defendant.

As a special protection for conscientious objectors, it is, as we have seen, required by the Universal Military Training and Service Act that whenever an appeal is taken from a local board's rejection of a claim for exemption based on conscientious objection, before acting upon the appeal the board must first refer the case to the Department of Justice for investigation, hearing, and recommendation. It becomes necessary now to consider this procedure more closely.

The agency that conducts the investigation for the Department is its Federal Bureau of Investigation. After a hearing, which is conducted, not by the F.B.I., but by a hearing officer, there follows a recommendation by still another department officer specially designated. The appeal board is required to consider, but it is not bound by, the recommendation. In accordance with the prevailing practice, the defendant was furnished a résumé of the investigation. It revealed nothing new that was damaging or in dispute. He was, however, denied the basic F.B.I. records. The appeal board also received a résumé, but not the F.B.I. records themselves, so that nothing was communicated to the appeal board beyond what was made known in identical language to the defendant. At the trial in the District Court, the defendant demanded that these records be produced for the Judge to determine the fairness and completeness of the résumé. The Judge refused to inspect F.B.I. records and quashed the subpoena duces tecum.

It is argued that withholding this report from the appellant and from the appeal board was a denial to him of procedural fairness, in that he was unable to test the adequacy of the résumé.

Relying on United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, and United States v. Campbell, 4 Cir., 221 F.2d 454, the District Judge ruled that the registrant is not entitled to a copy of the F.B.I. report, but only to the résumé.

The defendant claims, however, that the nature of the evidence and the purpose for which he wishes to examine it are not the same here as in the Nugent case, and thus attempts to distinguish the two cases. He maintains that in Nugent, the registrant desired the F.B.I. report only to rebut the adverse evidence contained therein, whereas here the object is to determine whether the favor-

able evidence was fairly and adequately summarized for the appeal board. In our opinion, a distinction on this basis would be untenable. While this small dissimilarity between the two cases may be noted, it is not such as to put this case beyond the scope of the Nugent rule. Were we to adopt the suggested distinction, its inevitable result would be to entitle the registrant to the report in all cases. The summary, which the Nugent case declares in all that he is entitled to have, would thus become unnecessary, and the Supreme Court's deliberate differentiation between the résumé and the full reports would be emptied of meaning. This differentiation was based upon the court's concept of the nature and purpose of the investigation and departmental procedure, for in denying Nugent the F.B.I. reports, the Supreme Court emphasized that Congress was not compelled to provide a Justice Department investigation auxiliary to the draft board procedures, and that in so doing, "it has regularly been assumed that it is not the function of this auxiliary procedure to provide a full-scale trial for each appealing registrant." United States v. Nugent, 346 U.S. 1, 9, 73 S.Ct. 991, 996, 99 L.Ed. 1417.

It was pointed out in Gonzales v. United States, 348 U.S. 407, 412, 75 S.Ct. 409, 412, 99 L.Ed. 467, that the statute itself does not, in terms, provide even for the résumé, but this was read into the law by the Supreme Court so as to accord with "underlying concepts of procedural regularity and basic fair play," tempered, however, in light of the problems entailed in meeting "the imperative needs of mobilization and national vigilance—when there is no time for 'litigious interruption.'" United States v. Nugent, supra, 346 U.S. at page 10, 73 S.Ct. at page 996.

In holding as we do, we are not unmindful of the recent decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. For the reasons which we shall state, we conclude that it cannot govern this case. Though somewhat analogous, the two are not the same. In Jencks it was held that when a prosecution witness took the stand against an accused, the latter could demand to see any statements concerning him made to the F.B.I. by the witness, to ascertain whether or not they conflicted with the testimony given in court. The theory was that a defendant needs such information to determine whether the reports contain material for cross-examination.

The history of the treatment of F.B.I. reports, both in Nugent and in other cases, however, indicates the sharp distinction between applications by defendants in ordinary criminal cases to examine statements made to the F.B.I. by witnesses called to the stand by the Government, and demands for the production of such reports in conscientious objector cases. It is arguable that the résumé furnished the accused in a Selective Service case is like a witness; that the résumé should be subject to testing for fairness and completeness by a process similar to that applied to a witness whose testimony may be impeached by showing prior conflicting statements. Moreover, it is undeniably true that one cannot easily judge the fairness and completeness of a résumé without looking at the documents it purports to summarize. See United States v. Evans, D.C., 115 F.Supp. 340 (Hincks, J.). In Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453, the point did not squarely arise, for there, without the necessity of looking at the original reports, it was obvious from the testimony in court that the summary was incomplete. The appellant argues, however, that it does not follow in the absence of such testimony that the fairness of the report must be presumed. However plausible these contentions, we cannot accept them, for the point was considered and rejected in Nugent.

The Supreme Court has manifested its view that the investigation required under the Selective Service Act in cases of conscientious objectors is *sui generis*, and that production of reports of such

investigations is not controlled by the rule applicable to criminal cases generally in respect to the use of prior conflicting statements to impeach witnesses. It is to be noted that the Jencks opinion makes no reference whatever to Nugent. No less noteworthy is the fact that when Chief Justice Vinson wrote for the Court in Nugent, he failed to mention his own opinion in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, written only three months before, in which it was recognized that in certain criminal cases, the right to see the F.B.I. reports would exist. Significant, also, is the fact that Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447, decided one month before the Reynolds case, and which, like the Jencks case, dealt with the broad question of the right of a defendant to examine F.B.I. reports and to confront, on cross-examination, an adverse witness, was nowhere referred to in the Nugent decision.

These circumstances gain added meaning when we bear in mind that the Nugent decision, as explained by Mr. Justice Clark in Simmons v. United States, 348 U.S. 397, 403, 75 S.Ct. 397, 401, 99 L.Ed. 453, "represented a balancing between the demands of an effective system for mobilizing the nation's manpower in times of crisis, and the demands of fairness toward the individual registrant." This very feature, which militates against a distinction between the present controversy and the Nugent case, suggests a distinction between those cases as a class and cases of which Jencks is representative.

Whatever may be the boundaries and limitations of the Jencks doctrine, we think it clear that it is subject to the qualification of the Nugent case for the type of problem here involved, that is, testing the accuracy of the résumé furnished in conscientious objector cases, in contrast to impeachment of witnesses in criminal cases. The Nugent case explicitly holds that if the defendant was furnished a résumé and accorded an opportunity to be heard, he cannot complain that he was not shown the investigative records, nor can he insist on their production at the criminal trial.

Rarely would a Court of Appeals be justified in declaring devitalized and no longer to be followed a Supreme Court decision passing directly on the precise point at issue, because of another decision of the Supreme Court in a related, though different area. The resolution of possible inconsistencies in the Supreme Court's decisions is ordinarily not the prerogative of inferior courts. United States v. Ullmann, 2 Cir., 221 F.2d 760; cf. Barnette v. West Virginia State Board of Education, D.C., 47 F.Supp. 251, Parker, Ch. J., affirmed 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628.

While Jencks points in the direction of a freer access, in some circumstances at least, to F.B.I. files than the Court was willing to sanction in Nugent, it is not for us to extend the Jencks doctrine to penetrate the sphere in which the Nugent case unmistakably declared the applicable law. The holding in Nugent has not been retracted, and although the Supreme Court has several times been invited to reconsider the matter, it has declined to do so.[3] We hold, therefore, that the balance struck in Nugent, of affording the defendant a résumé and not the original reports, governs here.

Affirmed.

3. This statement is supported by examination of the briefs filed by convicted defendants in support of petitions for certiorari in the following cases, in each of which the point was squarely raised: Tomlinson v. United States, 9 Cir., 216 F.2d 12, certiorari denied, 1954, 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755; White v. United States, 9 Cir., 215 F.2d 782, certiorari denied 1954, 348 U.S. 970, 75 S. Ct. 528, 99 L.Ed. 755; United States v. Simmons, 7 Cir., 213 F.2d 901, reversed 1954, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453; United States v. Dal Santo, 7 Cir., 205 F.2d 429, certiorari denied 1953, 346 U.S. 858, 74 S.Ct. 71, 98 L.Ed. 371.