**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Russell FREEMAN, Defendant-Appellant.**

**No. 16125.**

United States Court of Appeals
Seventh Circuit.

Dec. 6, 1967.

Rehearing Denied Jan. 19, 1968,
en banc.

Harry F. Peck, Jr., Hayes & Peck, Milwaukee, Wis., for defendant-appellant, Russell Freeman.

James B. Brennan, U. S. Atty., Thomas J. Jones, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before KNOCH, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

Defendant Freeman was convicted by the district court, without a jury of willfully refusing to submit to induction into the armed forces, 50 App. U.S.C. Sec. 462, and was sentenced to two years imprisonment. He has appealed. We reverse.

Freeman was classified 1–A in February, 1961, and received a Notice of Classification (SSS No. 110) which includes

notice of the right to a personal appearance and to appeal. He did not appeal. After being ordered to report for physical examination he filed a Special Form for Conscientious Objector (SSS No. 150) requesting the classification of conscientious objector. The Board refused to reopen his classification and informed him of this decision by a letter which included no notice of any right to appeal. Subsequently, after his child was born, Freeman was classified 3–A. In February, 1965, he was again classified 1–A, was sent a Notice of Classification, and again did not appeal. Thereafter, he was found acceptable for military service and was ordered to report for induction. He then submitted a letter refusing to serve because of religious beliefs. He reported for induction and refused to submit. His indictment and conviction followed.

In its letter of February 8, 1962, refusing to reopen Freeman's classification to consider his request for conscientious objector status, the Board stated that it had "reviewed" Freeman's classification with his formal claim to conscientious objector status, that the Board did not "feel" the information in the file warranted reopening the classification, and that he would remain in classification 1–A. Freeman contends that he was denied due process in the Local Board's refusal to reopen his file because of the consequent denial of his right of appeal by failure of the Board to inform him of that right. This contention was a basis urged for acquittal at the close of the government case in the criminal trial before us.

The Fifth Circuit in Olvera v. United States, 223 F.2d 880, held that a Local Board may not arbitrarily refuse to open a registrant's classification where he presents new information which, if true, would require reclassification. The hold-

ing was based on the court's view that the refusal to reopen denied a registrant his right of appeal and violated the "concepts of basic fairness which underlie all our legislation." Simmons v. United States, 348 U.S. 397, 405, 75 S.Ct. 397, 402, 99 L.Ed. 453.

We think the *Olvera* decision is correct because the procedural framework of the draft classification process and the narrowly limited judicial review available to draft registrants make adherence to procedural safeguards crucial to the maintenance of basic fairness.

■ The draft classification process must be exhausted before judicial power can be interposed. The exhaustion of the process ends with a registrant submitting, or refusing to submit, to induction. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944). In the first event, he may, after induction, proceed to challenge the legality of his classification by habeas corpus, Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). In the second event, he may challenge the legality of his classification as a defense to a criminal prosecution for refusal to submit to induction. In either case the judicial function in reviewing the classification is closely circumscribed to the narrow questions of whether the registrant has been denied due process, or of whether the Board's classification is without a basis in fact. Blalock v. United States, 4 Cir., 247 F.2d 615.[1]

The danger posed by this narrow scope of review is particularly acute when a claim for conscientious objector status is made. United States v. Wierzchucki, D. C., 248 F.Supp. 788. A sincere claimant for conscientious objector status cannot turn to the habeas corpus remedy because his religious belief prevents him from accepting induction under any circum-

---

[1]. "In a prosecution for refusing to submit to induction, the scope of judicial inquiry into the administrative proceedings leading to the defendant's classification is very limited. The range of review is the narrowest known to the law. * * * The 'clearly erroneous' rule * * * has no place here, nor even the 'substan-tial evidence' rule * * *. Congress gave the courts no general authority of review over draft board proceedings, and we have authority to reverse only if there is a denial of basic procedural fairness or if the conclusion of the board is without any basis in fact." Blalock v. United States, 247 F.2d at 619.

stances. As a result he is limited to seeking review in a criminal trial for refusal to submit. In this criminal proceeding, as in any proceeding reviewing a draft classification, his defense of invalid classification is tested by the "basis in fact" formula. Under these circumstances conviction is almost inevitable, since the Board's refusal to grant the conscientious objector classification is based on an inference as to the sincerity of the registrant's belief and there will almost always be somthing in the record to support an inference of lack of sincerity.

Finally, the critical nature of the classification process with regard to processing a claim for conscientious objector status is indicated because our laws have great concern for the protection of freedom of religion and conscience, and the conscientious objector classification is an attempt to carefully balance the need for mobilizing manpower for defense and the protections afforded by the First Amendment.

■ Despite these considerations, the Chief Executive has expressly withheld the right of counsel in the classification process and there is no unqualified right to advisers for the registrant. Under these circumstances the courts must carefully scrutinize the operation of the classification process in order to further the Congressional purpose of maintaining basic fairness in all proceedings under our law.[2]

The vital question here is the validity of the Board's denial of Freeman's request to reopen and reconsider his classification in 1962 pursuant to his claim of conscientious objector status in the SSS Form No. 150 in light of the fact that the Board thereby effectually denied Freeman's right of appeal. The pertinent regulation governing the Board's action on this request provides: "The local board may reopen and consider anew the classification of a registrant (a) upon written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * *." 32 C.F.R. 1625.2.

■ The key difference between a refusal of a Board to reopen a classification, and the granting of reopening followed by a denial of the requested classification, is in the requirement that if the request to reopen is granted the Board must classify the registrant "in the same manner as if he had never before been classified" 32 C.F.R. 1625.11; and must "mail notice thereof on Notice of Classification (SSS No. 110) * * * and on Classification Advice (SSS No. 111) [to the registrant] * * *." 32 C.F.R. 1625.12. This formal notification is a basis for the registrant's right to a personal appearance and to appeal his classification. When a Board refuses to reopen a classification, formal notice is not required and the Board must merely "advise" the registrant that reopening the classification is not warranted. No notice of any right to appeal is given. Accordingly, we think Freeman was effectually denied, in 1962, his right to appeal the denial of his request for conscientious objector status.

In our opinion the Local Board was compelled to reopen Freeman's classification in 1962 and extend to him all the rights provided in the regulations since he presented new information in his 1962 SSS Form 150 which, if true, entitled him to reclassification.[3] The Board deprived him of the right when it, instead of reopening his classification, decided the "merits" of his claim and notified him by letter of the refusal to reopen,

---

2. "The Universal Military Training Act" itself sets out the Congressional policy that the "obligations * * * of serving in the armed forces * * * be shared generally, in accordance with a system of selection which is fair and just. * * *" 50 App.U.S.C. Sec. 451(c).

3. Freeman stated in his Special Form for Conscientious Objector that he believed in a supreme being, that he was a member of the Islam religion, and that by reason of his religious beliefs he was opposed to participation in war in any form.

thereby denying him the appropriate procedural safeguards.

■ The denial of due process in 1961 was not obviated by the fact that in 1965 Freeman was duly notified of reclassification from 3-A to 1-A and did not appeal. He could not be expected to infer from the notice of classification in 1965 that he then had an opportunity to appeal the rejection of his 1961 request for conscientious objector status which had been previously denied without affording him any right to appeal. The awesome responsibility carried by Local Boards in "balancing between the demands of an effective system of mobilizing the nation's manpower in times of crisis and the demands of fairness toward the individual registrant," cannot justify denial of basic fairness. Simmons v. United States, 348 U.S. 397, 403, 75 S.Ct. 397, 99 L.Ed. 453.

■ There is no merit in the government's contention that the errors in the classification process were cured by the de novo consideration of Freeman's classification made during his criminal trial. The issue of whether Freeman was entitled to conscientious objector status had no place in the trial. Congress has given to Local Boards the power to classify registrants and a scheme of statutory and regulatory procedures has been established. The courts have no classifying role in the scheme. They are precluded from acting as "superboards" in making de novo classifications. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428. Moreover, even if we were to consider the evidence presented at the de novo hearing, it is clear that the government has not met its burden of prov-

ing, beyond a reasonable doubt, that Freeman was not prejudiced by the denial of his right to appeal.[4] Steele v. United States, 1 Cir., 240 F.2d 142.

Messr. Harry F. Peck, Jr., of Milwaukee, Wisconsin, acted as court appointed counsel for Freeman on this appeal. The court extends thanks to him for his fine service to this court and to his client.

For the reasons given, we reverse.

KNOCH, Circuit Judge (dissenting).

Regretfully, I find myself in disagreement with the conclusion that the Local Board was compelled to reopen the defendant's classification in 1961 on the ground that he had presented new information in his 1961 SSS Form 150, which, if true, would have entitled him to reclassification.

Judge Kiley summarizes that information as follows:

Freeman stated in his Special Form for Conscientious Objector that he believed in a supreme being, that he was a member of the Islam religion, and that by reason of his religious beliefs he was opposed to participation in war in any form.

Most of this data comes from statements appearing in the printed form which were adopted by the defendant by check mark or signature. When the whole form is considered, including his own added comments, no such clear-cut statement is presented.

For example, Question No. 2 in Series II on Religious Training and Belief, asks:

Describe the nature of your belief which is the basis of your claim made

---

4. This burden appears to be impossible to meet in a case such as this where a claimant to conscientious objector status has been denied his right of appeal. Claimants to conscientious objector status have special rights upon appeal which cannot be provided in a criminal trial. Under 50 App.U.S.C. § 456(j), where a Local Board denies a request for conscientious objector status and the registrant appeals,

"* * * the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. * * *"

in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation.

The defendant had signed a printed statement in Series I which read:

I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces.

When asked to describe the nature of this belief in Question No. 2, the defendant said merely:

"Islam I am not a citizen of United States."

Question No. 5 asked "Under what circumstances, if any, do you believe in the use of force?" Defendant answered: "If someone attack me, I will fight back."

When asked to describe the actions and behavior in his life which in his opinion most conspicuously demonstrated the consistency and depth of his religious conconvictions, in Question No. 6 defendant put in one word only: "Peace." In answer to Question No. 7, on whether he had ever given public expression, written or oral, to the views expressed as the basis for his claim, he said "no." Then in Series IV, Question No. 2, "Are you a member of a religious sect or organization?" defendant said "no."

I cannot agree that on this meager information the Board was obliged to reopen its case particularly in view of the fact that the defendant did not request the form for Conscientious Objector until 10 days after an order issued in November, 1961, directing him to report for a physical examination, having ignored notice of his right to appeal his initial classification of 1–A, notice of which was sent to him in February, 1961. I would affirm the decision of the District Court.