Gerson GROSFELD

v.

**Dr. Harold P. MORRIS, Dr. Walter C. Dorn, Mr. Woodrow L. Taylor, Mr. Evarts Wagg, and Mrs. Evelyn E. McIntyre, Members of Selective Service Local Board 53, Maryland; Col. James L. Hays, III, State Director of Selective Service for Maryland; and Lt. Col. Peter P. Borowski, Commander of Armed Forces Examining and Entrance Station, Ft. Holabird, Maryland.**

Civ. No. 21054.

United States District Court
D. Maryland.

Aug. 15, 1969.

Gaillard T. Hunt, Washington, D. C., and Elsbeth Levy Bothe, Baltimore, Md., for plaintiff.

Stephen H. Sachs, U. S. Atty., and Clarence E. Goetz, Asst. U. S. Atty., Dist. of Maryland, for defendants.

FRANK A. KAUFMAN, District Judge.

The plaintiff, Gerson Grosfeld, is currently classified I-A (eligible for military service) by his Selective Service Local Board and has been ordered to report during this month for induction into the Armed Forces. In this action, in which the members of that Local Board, the State Director of Selective Service and the Commander of the Armed Forces Examining and Entrance Station at Fort Holabird, Maryland, are named as defendants, Grosfeld contends that the Board has acted illegally in classifying him I-A and seeks a temporary restraining order, a writ of habeas corpus and/or relief in the nature of mandamus to prevent his induction.

The following relevant facts are agreed upon by the parties:

(1) Grosfeld was an undergraduate student at the University of Maryland between September, 1964 and June, 1968. During each of those years, he was given an undergraduate II-S deferment by his Local Board. The last such deferment was requested on October 22, 1967 and was granted on November 6, 1967. Following his graduation from the University of Maryland and receipt of a baccalaureate degree from that institution in June of 1968, Grosfeld was no longer eligible for an undergraduate II-S deferment. Accordingly, his Local Board classified him I-A in late August, 1968.

(2) About the same time, Grosfeld began attending the University of Arizona as a full-time graduate student and part-time teaching assistant. He wrote his Local Board and requested a graduate student (II-S) or an occupational (II-A) deferment. The Board treated this letter as an appeal from his I-A classification and forwarded the letter, along with Grosfeld's file, to the State Appeal Board for Maryland. On December 10, 1968, the Appeal Board sustained the I-A classification by a vote of 5–0.

(3) Pursuant to the I-A classification, Grosfeld's Local Board sent him on March 26, 1969 an order to report for induction April 15, 1969. Grosfeld immediately responded by asking the Local Board to defer him until the end of the school year so that he could finish the academic year at Arizona. Grosfeld also requested a graduate student I-S classification (which he now contends the Board was required to grant to him) until the completion of the school year. Without reopening Grosfeld's case, the Local Board notified him that it would not change his I-A classification but that his induction would be delayed until the first draft in June of men registered with that Board.

(4) Late in April of 1969, Grosfeld sought a III-A hardship deferment. In support thereof Grosfeld wrote a letter which reached his Local Board on April 28, 1969, in which he stated that he had just learned for the first time that a serious disease from which his mother had been suffering would be gravely affected by his induction and that his mother's doctors believed that his induction would cause her dangerous deterioration. Grosfeld offered to supply evidence supporting his claim for a III-A classification.

(5) Grosfeld did not again hear from his Local Board until July 24, 1969, when he received a letter ordering him to report for induction August 12, 1969. In that same letter, the Local Board notified him that it refused to reopen his case in order to consider the claim which he had made in April for a III-A deferment.

On August 5, 1969, Grosfeld instituted this case, challenging the legality of his induction order and the underlying I-A classification on two principal grounds. First, he contends that he was entitled by statute to a I-S classification during the academic year of 1968–1969 and that his request for such classification was wrongfully refused by his Local Board.

Second, he claims that he presented a prima facie case for a III-A classification and that the Board's refusal to re-open his case constituted a denial of procedural due process. It is Grosfeld's position that both of these actions were illegal and that, for reasons which are more fully recounted *infra*, each of those two illegal actions vitiate his current I-A classification.

Jurisdiction is said to lie in this case under the mandamus statute, 28 U.S.C. § 1361, and the habeas corpus statutes, 28 U.S.C. §§ 2241 et seq. However, section 10(b) (3) of the Selective Service Act of 1967 provides:

> No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant. [50 U.S.C. App. § 460(b) (3).]

At issue is whether this statute bars, at this time, this Court's jurisdiction to pass on the merits of Grosfeld's arguments. If so, then Grosfeld may obtain judicial review only by means of habeas corpus after induction or defending a criminal prosecution should he choose to refuse induction. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968); Kraus v. Selective Service System Local 25, 408 F.2d 622 (4th Cir. March 13, 1969).

I.

Grosfeld's claim that he was entitled to a I-S deferment rests on the provisions of section 6(i) (2) of the Selective Service Act of 1967, which provides:

> Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: *Provided,* That any person who has heretofore had his induction postponed under the provisions of section 6(i) (2) of the Selective Service Act of 1948 [former subsection (i) (2) of this section]; or any person who has heretofore been deferred as a student under section 6(h) of such Act [former subsection (h) of this section]; or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning except as may be provided by regulations prescribed by the President pursuant to the provisions of subsection (h) of this section. [50 U.S.C. App. § 456(i) (2).]

Grosfeld urges that since he was "satisfactorily pursuing a full-time course of instruction" at the University of Arizona, he qualified for a deferment under this section. He also points out that none of the three exceptions listed in the *"Provided"* clause applies to him. The first two exceptions apply to persons who received student deferments under the Selective Service Act of 1948, which was in force only between 1948 and 1951. Knutson v. Selective Service System, 304 F.Supp. 730 (D.Minn. April 1, 1969); Schafer v. Mitchell, 304 F.Supp. 1227 (N.D.Calif. Mar. 31, 1969). The third exception refers to persons who have previously received a deferment under

section 6(i) (2) after the effective date of the statute, July 1, 1967. *See* Crane v. Hershey, 410 F.2d 966 (1st Cir. May 22, 1969); Rich v. Hershey, 408 F.2d 944 (10th Cir. Apr. 1, 1969).

■ However, these three exceptions are not exclusive. A fourth exception in the Selective Service Act of 1967 is found in section 6(h) (1), which authorizes and directs the President to prescribe regulations to grant a deferment to a full-time student until he qualifies for a baccalaureate degree, reaches the age of twenty-four, or fails satisfactorily to pursue a full-time course of study. That section also provides that:

> No person who has received a student deferment under the provisions of this paragraph shall therafter be granted a deferment * * * under subsection (i) of this section if he has been awarded a baccalaureate degree, except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest. * * * [50 U.S.C. App. § 456(h) (1).]

Section 6(h) (1) therefore bars any person who has received an undergraduate II-S student deferment and a baccalaureate degree after the effective date of the statute, July 1, 1967, from receiving a graduate I-S deferment (other than for studies in certain specified fields) [1] pursuant to section 6(i) (2). *See* Crane v. Hershey, *supra*; Rich v. Hershey, *supra;* Kaplysh v. Allen, 303 F.Supp. 1007 (N.D.Ohio Apr. 22, 1969); Griffiths and Hechman, Eligibility for I-S of Registrants Holding Graduate II-S Since July 1, 1967, 1 SSLR 4041 (1968). In this case, Grosfeld requested on October 22, 1967 and received on November 6, 1967 a II-S deferment, and graduated from the University of Maryland in June of 1968. He thus falls within the express terms of section 6(h) (1) [2] and, for that reason, did not have a statutory right to a I-S deferment while attending graduate school during the 1968–1969 term.

It should be noted that even if Grosfeld were entitled to a deferment under section 6(i) (2), two further questions would have to be answered in his favor before he could obtain the relief which he seeks. First, is the "deferment," which section 6(i) (2) requires, necessarily a I-S classification rather than a mere delay in induction? Second, is the issue presented by that first question one which is subject to judicial review prior to induction? In this case.

---

1. Grosfeld makes no claim that his studies at the University of Arizona met the requirements in connection with national health, safety, or interest.

2. The question has arisen in some cases as to whether a graduate student who received a II–S deferment after July 1, 1967, but who received a baccalaureate degree *prior* to that date, is also barred from a I–S deferment. The regulation implementing section 6(i) (2) provides, in pertinent part, that:
   * * * no registrant shall be placed in Class I–S * * *
   (2) who has been deferred as a student in Class II–S and has received his baccalaureate degree. [32 C.F.R. § 1622.15(b).]
   In Local Board Memorandum No. 87, the Director of Selective Service has interpreted this regulation as follows:

   > Section 1622.15(b) of the Selective Service Regulations refers to a registrant who has been placed in Class II–S after June 30, 1967, and has a baccalaureate degree.

   The courts have differed in determining whether this interpretation is consistent with section 6(i) (2). *Compare* Rich v. Hershey, *supra* (consistent) *with* Kaplysh v. Allen, *supra* (inconsistent) and Crane v. Hershey, *supra* (inconsistent). *See also* Green v. Hershey, 302 F.Supp. 43 (N.D.Tex. June 11, 1969), and cases cited therein; Griffiths and Hechman, Eligibility for I–S of Registrants Holding Graduate II–S Since July 1, 1967, *supra*. In this case, Grosfeld received both a II–S deferment and his baccalaureate degree *after* July 1, 1967. Thus, the issue discussed *supra* in this footnote is not presented in this case.

Grosfeld's Local Board retained him in a I-A classification but notified him that he would not be called for induction until the end of the university term. The consequence of the use of that procedure was that Grosfeld's classification did not expire and therefore his case did not automatically require reopening at the end of the school year. Had Grosfeld been given a I-S deferment, a new classification would have had to be determined at the end of the school year of 1968–1969, and he would thereby have had the procedural rights to a personal appearance and appeal as well as the opportunity to present to his Board new evidence supporting his request for a III-A hardship deferment before his Board made its decision in connection with that request. *See* 32 C.F.R. §§ 1624.1, 1625.11, 1625.13, 1626.2.

This Court holds that section 6(h) (1) precluded Grosfeld's Board from granting him a section 6(i) (2) "deferment." Therefore, the question of whether Grosfeld was entitled, if section 6(i) (2) applied, to a I-S classification rather than only an induction delay need not be answered herein. If section 6(h) (1) did not bar a section 6(i) (2) classification, then the second question concerning the timeliness of Grosfeld's application for relief would need to be answered.

In Oestereich v. Selective Service System Local Board No. 11, *supra*, the Supreme Court held that section 10(b) (3) did not bar pre-induction judicial review of the registrant's right to a statutory section 6(g) exemption as a divinity student. On the other hand, judicial review has been held barred in cases involving administrative classifications in which the discretion and fact-finding of the Local Board were essential elements. Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968) (conscientious objector); Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1968) (student); Kraus v. Selective Service System Local 25, 408 F.2d 622 (4th Cir. March 13, 1969) (depend-

ency deferment). *Oestereich* dealt with a statutory *exemption*. Grosfeld claims he was entitled to a I-S *deferment*. The First and Tenth Circuits have held that section 10(b) (3) does not bar judicial review of a failure to grant a I-S deferment as required by section 6(i) (2). Crane v. Hershey, *supra;* Rich v. Hershey, *supra*. In *Crane,* Judge Aldrich wrote:

> We remain unimpressed by the Government's attempted distinction between statutory exemptions, as in *Oestereich* * * * and statutorily dictated deferments.

This Court, having determined that Grosfeld is not entitled as of right to a I-S deferment pursuant to section 6(i) (2), need not face the issue of whether the *Oestereich* doctrine would otherwise be operative in connection with the denial of Grosfeld's student deferment application. But the question of whether the *Oestereich* doctrine is applicable must be squarely faced in connection with Grosfeld's allegations of denial of due process in connection with his request for a III-A hardship deferment.

### II.

Grosfeld urges that even if he was not entitled to a student deferment during the school year of 1968–1969, he has been denied due process in connection with his request for a III-A classification. Grosfeld maintains that he made a prima facie case for a III-A hardship deferment and that thereupon his Board was required to reopen his case and to grant him the procedural opportunities flowing therefrom. The regulations provide that the Local Board "may" reopen a case:

> (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * *. [32 C.F.R. § 1625.2.]

The regulation is not on its face mandatory. However, several courts have

held that reopening is mandatory after the registrant has presented a prima facie claim of a new state of affairs. Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); United States ·v. Longworth, 269 F. Supp. 971 (S.D.Ohio 1967); United States v. Burlich, 257 F.Supp. 906 (S.D. N.Y.1966); and cases cited therein.

This Court has not reviewed Grosfeld's Selective Service file and does not know if he has, in fact, made out a prima facie case for a III-A classification. In addition, this Court does not need to decide whether Grosfeld's Board was or was not required to reopen his case if he in fact did make a prima facie case in his April 1969 request though this Court notes the above-cited cases which would appear to require that that question be answered in the affirmative. For, even if the Board's action in refusing to reopen Grosfeld's case to consider his III-A claim did deny to him his Fifth Amendment due process rights, this Court, under section 10(b) (3), has no jurisdiction to consider that issue at this time. *See* Oestereich v. Selective Service System Local Board, *supra;* Clark v. Gabriel, *supra;* Boyd v. Clark, *supra;* Kraus v. Selective Service System Local, *supra.* In *Kraus,* the petitioner had formerly been classified III-A as a father living with his wife and children. However, after Kraus, in protest of the war in Viet Nam, returned his classification card, his Board reclassified him I-A and ordered him to report for induction. Kraus then sought in this Court an injunction prohibiting his induction, "alleging that his reclassification was punitive and that it violated the First and Fifth Amendments." The Fourth Circuit, in an opinion by Judge Butzner affirming the denial of relief by Judge R. Dorsey Watkins in this Court, held that judicial review before induction was barred by section 10(b) (3), and in so doing, wrote:

The significant factual difference that distinguishes *Oestereich* from the case before us is this: Oestereich was a ministerial student with a IV-D exemption; Kraus, as previously mentioned, had a III-A dependency deferment. * * *

* * * * *

The only exception to the deferment of judicial review recognized by the Supreme Court arises from administrative action that deprives a registrant of a statutory exemption. [citing *Oestereich*] Since Kraus does not fall within this exception, he can contest his reclassification only after completion of administrative action [including induction] as prescribed by Congress in § 10(b) (3). * * *

Judge Butzner stressed that the validity of the procedures employed by a local board can be judged after the administrative process has been completed. At the same time, he characterized Kraus' due process claims as "substantial."

■ Petitioner has suggested that *Kraus* is distinguishable from the case at bar because, whereas Kraus argued that he was entitled as of right to a III-A classification, Grosfeld is challenging only the propriety of the procedures used by the Board in refusing to reopen his I-A classification. The gravamen of Kraus' complaint was that the procedure used by his Board in determining a I-A classification—allegedly as a punishment for his protesting the Viet Nam war by returning his classification card—was arbitrary and punitive and thus violative of due process. The Fourth Circuit held that Kraus could not obtain judicial review on this claim prior to induction regardless of the procedures used by the Board because Kraus had no statutory right to a III-A deferment. The same analysis and construction of section 10(b) (3) was made by the Eighth Circuit in Kolden v. Selective Service Local Board No. 4, 406 F.2d 631 (8th Cir. Jan. 28, 1969). That case involved a claim that the reclassification of the registrant from II-S to I-A because he returned his draft card constituted a deprivation of due process. The Court held that

"where, as here, a registrant is deprived of a deferment that had been granted as a matter of administrative grace in the first instance, the courts can review the classification only in a criminal prosecution or a habeas corpus proceeding."

In Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1956), cited with apparent approval by Mr. Justice Douglas in *Oestereich, supra* at 238 of 393 U.S., 89 S.Ct. 414, the Sixth Circuit, in an opinion written by Mr. Justice Stewart, then a Circuit Judge, held that the failure to permit the registrant to appeal from an order of his Local Board denying, after a reopening, a change in classification entitled the registrant to pre-induction injunctive relief. In that case, the Government contended that Townsend had waived his right to appeal by certain failures on his part. Mr. Justice Stewart, in rejecting that contention, reviewed the failure of the Local Board to reopen the case at one or more times earlier than the date it "did finally reopen." 237 F.2d at 378.

Grosfeld contends that *Townsend,* and Mr. Justice Douglas' citation of it in *Oestereich,* require this Court to grant pre-induction relief in this case. But *Townsend* involved a denial by a Local Board of a registrant's right to appeal —an act which was clearly illegal on its face. In this case, Grosfeld, under any view of the law, was entitled to a reopening only if his claim for relief alleged a sufficient factual basis. A determination of whether Grosfeld has made out such a prima facie case would in itself require this Court to review Grosfeld's Selective Service file at this time and to inferfere with the administrative processes of Selective Service prior to induction. *See* Mr. Justice Harlan's concurring opinion in *Oestereich, supra* at 239 of 393 U.S., at 417 of 89 S.Ct. In *Townsend,* the Court did review the Selective Service file but only as a result of the Government's claim that the registrant had waived his right to appeal after the reopening. In this case, Grosfeld cannot establish that his Local Board acted illegally without affirmatively proving to this Court, by an analysis of the Selective Service file, that Grosfeld in fact has made a sufficient prima facie case supporting his claim for a III-A hardship deferment.

Grosfeld also argues, referring to certain words in *Oestereich,* that regardless of the effect of section 10(b) (3) on his requests for injunctive or mandatory relief, habeas corpus before induction is available because the Constitution forbids its suspension other than during rebellion or invasion (Article I, § 9). But a reading of *Oestereich* as well as Clark v. Gabriel, *supra,* makes it clear that the Supreme Court was referring to habeas corpus *after* induction. In Moskowitz v. Kindt, 273 F.Supp. 646, 648 (E.D.Pa.1967), *aff'd,* 394 F.2d 648 (3d Cir. 1968), Judge Weiner concluded that "both the statutory and the common law to date unite in authorizing jurisdiction to review Selective Service action solely in these ways" i. e., "by way of a defense to a criminal prosecution for resisting induction or by way of petition for habeas corpus once he is inducted." In United States ex rel. Caputo v. Sharp, 282 F.Supp. 362, 363 (E.D.Pa.1968), the same judge wrote:

Habeas corpus is an extraordinary remedy, and is generally reserved for those situations where other relief is not practically available. Hence, this court would have no jurisdiction to entertain an application for a writ of habeas corpus prior to the relator's actual induction, * * *.

Clark v. Gabriel, *supra,* has sustained that view and has established that restraints imposed by an order to report for induction are not so burdensome that Congress cannot postpone relief until after induction.[3]

---

3. Grosfeld has alleged, *inter alia,* that on July 30, 1969 he requested his Local Board to permit him to depart from the United States, and that respondents refused to permit him to do so. Grosfeld cites that refusal as an example of the

In this Court's view, *Kraus* requires this Court to hold that it has no jurisdiction to adjudicate the merits of Grosfeld's argument before his induction—and this Court does hereby so hold. Grosfeld's choices are (a) to submit to induction, (b) to refuse induction and defend a criminal prosecution, and (c) to submit to induction and thereafter petition for a writ of habeas corpus. In the event that Grosfeld chooses either of the last two alternatives, he may then secure judicial review of his classification.

For the reasons set forth in this opinion, the relief which Grosfeld seeks is denied and the complaint is dismissed.

restraints which were imposed upon him by his I–A classification. Grosfeld apparently does not at this time seek habeas corpus or any other relief in connection with any denial to him of his right to travel out of the United States. Therefore, this Court need not decide in this case whether a court will, in a habeas corpus or other proceeding instituted prior to induction, entertain on the merits a claim that a registrant has been illegally denied his right to leave the United States.