**In re ABRAMSON.**

**No. 10688.**

United States Court of Appeals Third Circuit.

Argued March 20, 1952.

Decided May 1, 1952.

S. Herman Cohen, Bloomfield, N. J., Samuel Weiss, New York City, for appellants.

Stuart B. Rounds, Asst. U. S. Atty., Trenton, N. J. (Grover C. Richman, Jr., U. S. Atty. for District of New Jersey, Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Petitioner has appealed from an ex parte order of the District Court for the District of New Jersey denying an application on behalf of her husband, Arnold I. Abramson, a recently inducted soldier, for a writ of habeas corpus to be directed to the Commanding Officer, Camp Kilmer, New Jersey. The United States, as amicus curiae, has supported the decision of the District Court. In issue is the legality of impressment into the United States Army of a Selective Service registrant who, between the dates of posting and delivery of an incorrectly addressed induction order, made an appropriate showing of entitlement to reclassification within a deferred category.

We accept as true, for purposes of this appeal, the facts averred. The Abramsons were married in 1950. In November 1951, the husband was classified I-A by his local draft board. On February 5, 1952, the board posted a letter containing its order that Abramson report for induction on a day certain. The envelope was correctly addressed in respect to Abramson's name, street number, and street, but incorrectly addressed to Flushing, instead of Jamaica, in the City of New York. Flushing and Jamaica, though both within the corporate limits of the metropolis, are separate postal areas served by separate post offices. The induction order was received on February 8, the word "Flushing" having been crossed out, and "Jamaica" written in pencil beside it.

In the meantime, on February 7, the husband, unaware of the induction order, filed with his draft board the certificate of a licensed physician stating that Mrs. Abramson was pregnant. He was then informed by the clerk of the board that a notice of induction had already been mailed to him. Thereafter, the board refused to consider . any proof of the existence of the unborn child on the ground that prior to the showing of this fact an induction order had been mailed to the father. Further resort to the State Director of Selective Service and the local government appeal agent having

proved fruitless, it appears that administrative remedies, either by way of appeal from his classification in I–A or by way of securing a reopening of that classification by the local board, were exhausted. Parts 625 and 626 of Executive Order 9988, 13 F.R. 4851, August 20, 1948, *as amended,* Executive Order 10292, 16 F.R. 9843, September 28, 1951. On February 18, 1952, Abramson was inducted into the Army.

Under the scheme of Selective Service, registrants in Class I–A are subject to immediate call for armed service, while registrants in Class III–A are deferred from military service because of dependents. Part 1622 of Executive Order 10292, supra. Section 1622.30 of the Selective Service Regulations, promulgated under Executive Order No. 10292, supra, expressly provides that from the date of the conception of a child its father who maintains a bona fide family and home relationship is entitled to III–A classification.

Here registrant was in I–A. His wife became pregnant. He, therefore, became entitled, upon proper showing, to transfer to III–A.

But this does not end the matter. In the interest of orderly administration of Selective Service, it is reasonable to provide some cut-off date short of the actual time of induction for the assertion of rights of reclassification and deferment. It might have sufficed to cut off the registrant's right to claim deferment at the time he should receive an order of induction. But this would have created uncertainty and encouraged controversy, since it would have left the cut-off date within the exclusive knowledge of the registrant himself. At the other extreme, it might not have been too harsh to make any such claim too late if asserted after the local board had selected the registrant for induction at a particular time. In any event, the regulation actually adopted and applicable to this case takes a middle ground. It stipulates that "No registrant shall be placed in Class III–A because he has a child which is not yet born unless, prior to the time the local board mails him an order to report for induction, there is filed with the local board the cer-

tificate of a licensed physician stating that the child has been conceived". Section 1622.30, supra.

The need for such regulation has already been pointed out and its reasonableness is not challenged. The question, therefore, is simply what does the regulation mean? In the context of this case, did the registrant file the requisite certificate of parenthood before the board "mail[ed] him" an induction order within the meaning of Section 1622.30?

Other regulations show how significant it is in the administrative scheme of Selective Service that operative communications to registrants be properly directed. One regulation provides:

" * * * It shall be the duty of each registrant to keep his local board advised at all times of *the address where mail will reach him.* The mailing of any order * * * by the local board to a registrant *at the address last reported* by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not." (Italics added.) Section 641.3 of Executive Order Sept. 17, 1948, No. 10001, 13 F.R. 5473, 5483.

Another regulation provides that the time allowed a registrant to perform such duties as may be imposed by board orders shall begin to run the day after the mailing of notice to him. Section 641.6 of Executive Order 10001, supra. But only a properly addressed communication is notice under Section 641.3. Thus, the rational basis of the timing provision of Section 641.6 seems to be the likelihood that within the area served by a local board a properly addressed communication will be delivered not later than the day following its mailing. In any event, it is clear on the face of the regulations that before receipt a communication cannot be notice to a registrant or impose affirmative duties upon him, unless it is properly addressed.

In logic, nothing to the contrary appearing, we think this rational conception of mailing as including proper address-

ing should be viewed as pervading the body of Selective Service regulations so that when Section 1622.30 employs the phrase "mails him" it means "mails [properly addressed to] him". Moreover, while administrative accommodation may dictate that rights of registrants normally be terminated before actual receipt of an induction notice, we think it only fair, and not burdensome on government, that a cut off stated in terms of mailing depend upon administrative accuracy in directing the communication. If substantial error appears in the mailing address the communication should not be regarded as mailed to the addressee, at least until the time of delivery. And there was such error here. For it is not to be presumed that a letter addressed to the wrong postal area in the country's largest metropolis will proceed in normal course of post to its intended destination.

Our conviction that we have rightly construed the regulation in question is reinforced by the fact that in dealing with a variety of legal problems courts rather uniformly have reasoned that normal legal consequences attach to the mailing of a communication only when it is properly addressed. E. g., Restatement, Contracts, §§ 64–67 (1932) (acceptance of an offer); Note, 155 A.L.R. 1279 (1945) (notice in tax foreclosure proceedings); Uniform Negotiable Instruments Act, §§ 105, 108 (notice of dishonor); Uniform Commercial Code, § 1–201 (notices and writings).

It follows that, if the facts are as here alleged, the local board without lawful excuse refused to consider or act upon a timely request for reclassification and deferment asserted by the registrant upon a ground and with a tender of proof declared sufficient by the controlling regulations. This court has pointed out that situations of this type are within the very limited reach of habeas corpus issuable after induction to challenge the legality of the classification which enabled induction. Ex parte Stanziale, 3 Cir. 1943, 138 F.2d 312. Cf. Estep v. United States, 1945, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59.

It is our opinion that the petition and supporting affidavit in this case state a basis for relief. Accordingly, the order denying the writ will be vacated and the cause remanded for further proceedings consistent with this opinion.