**UNITED STATES of America ex rel. Levi Jeremiah WILKER-SON, Petitioner,**

v.

**COMMANDING OFFICER, ARMED FORCES EXAMINING STATION, 39 Whitehall Street, Respondent.**

**No. 68 Civ. 1721.**

United States District Court
S. D. New York.

June 20, 1968.

Rabinowitz, Boudin & Standard, New York City, for petitioner; Joan Goldberg, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for respondent; Daniel Riesel, Asst. U. S. Atty., of counsel.

WYATT, District Judge.

This is a petition for a writ of habeas corpus. 28 U.S.C. § 2241. Petitioner, Levi Jeremiah Wilkerson (Levi), was on April 29 or 30, 1968, inducted into the Armed Forces of the United States. This took place at the Examining and Entrance Station at 39 Whitehall Street in New York County in this District.

Induction was in obedience to an order to report for induction of Local Board No. 45 of New Orleans, Louisi-

ana, mailed January 22, 1968; of an order for transferred man to report for induction of the Transfer Board of Local Board No. 5 of New York City mailed February 16, 1968; and of a direction to report for induction mailed April 25, 1968 by the Transfer Board of Local Board No. 5.

By his petition Levi challenges the legality of the classification by the Local Board in New Orleans which enabled the induction. Levi asserts that—before any order to report for induction had been made—he presented to the Local Board information which would entitle him to deferment in Class III–A on account of extreme hardship to dependents. 32 CFR § 1622.30(b). He says that the refusal of the Local Board to reopen his classification was "arbitrary, capricious and illegal" and that his induction was not authorized by law.

The Court has jurisdiction of the petition under 28 U.S.C. § 2241(c) (1) and (3). It has been said that situations such as that of Levi are "within the very limited reach of habeas corpus issuable after induction to challenge the legality of the classification which enabled induction". In re Abramson, 196 F.2d 261, 264 (3d Cir. 1952). The Supreme Court has referred to such jurisdiction, apparently with approval, in Jones v. Cunningham, 371 U.S. 236, 240, 83 S. Ct. 373, 375, 9 L.Ed.2d 285 (1963):

> "Habeas corpus has also been consistently regarded by lower federal courts as the appropriate procedural vehicle for questioning the legality of an induction or enlistment into the military service."

■ It is true that an amendment to 50 U.S.C.App. § 460(b) (3), effective June 30, 1967, provides: "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted * * * after the registrant has responded either affirmatively or negatively to an order to report for induction * * *." It has

been conceded for respondent that this amendment does not affect the traditional writ of habeas corpus. I do not believe that the amendment applies to petitions for writs of habeas corpus nor that it was intended by Congress to apply to such petitions. House Report No. 267 has this to say about the reason for the amendment ((1967) 1 U.S.Code Cong. & Adm.News, p. 1333):

> "The committee was disturbed by the apparent inclination of some courts to review the classification action of local or appeal boards before the registrant had exhausted his administrative remedies. Existing law quite clearly precludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard of this principle of the law by various courts could seriously affect the administration of the Selective Service System."

Since suspension of the privilege of the writ of habeas corpus raises grave constitutional questions (Art. I § 9), only the most explicit language by Congress could be held to have that effect. See United States ex rel. Goldstein v. McNamara, 270 F.Supp. 892, 895 (E.D. Pa.1967).

The writ issued in the case at bar on April 29, 1968; respondent has made a return. When the writ issued Levi was in the custody of respondent and has not been taken into the custody of this Court; apparently by informal arrangement respondent is keeping Levi within this District until his petition is decided.

Levi was born on January 6, 1947 in New Orleans.

On January 26, 1965, his completed Classification Questionnaire, SSS Form

No. 100, was received by Local Board No. 45 in New Orleans ("Local Board" hereafter refers to Local Board No. 45 in New Orleans). Form No. 100 contains a section in which the registrant specifies persons who are wholly or partially dependent upon him for support. Levi left this section blank.

On February 17, 1965, the Local Board classified Levi I–S(H), high school student; this was done under 32 CFR § 1622.15(a). A notice of classification on SSS Form No. 110 was mailed to Levi the same day.

On September 21, 1965, a Current Information Questionnaire, SSS Form No. 127, was mailed to Levi. His completed questionnaire was received by the Local Board on September 27, 1965; he stated that he was then a full-time student at Grambling College, Grambling, Louisiana, and that he expected to receive his degree in June of 1969. Verification from the college was received by the Local Board on September 28, 1965.

On October 12, 1965, the Local Board classified Levi as II–S, college student; this was done under 32 CFR § 1622.25. Notice of classification on SSS Form No. 110 was mailed to Levi the same day.

Under date of December 6, 1966, the Local Board wrote Levi at a New Orleans address that no verification of his enrollment in college had been received for the 1966–67 academic year and requested him to furnish the information immediately.

Levi replied from New York under date of January 12, 1967, giving an address in Brooklyn. He advised that his father had had a stroke, which prevented his working, and that while his father received a pension it was not enough to take care of the family and in consequence Levi was no longer in school but was working to help support his father and mother. While he did not ask in so many words for deferment, Levi did say that he "would appreciate" the "cooperation" of the Local Board.

Evidently on the basis that he was no longer a student, the Local Board on January 18, 1967 classified Levi as I–A. Notice of classification, SSS Form No. 110, was mailed to him the same day. Although there is a right of appeal within the Selective Service System from the classification of a local board (32 CFR § 1626.2) Levi took no appeal.

On August 1, 1967, the Local Board mailed to Levi at the Brooklyn address an Order to Report in New Orleans for Armed Forces Physical Examination, SSS Form No. 223.

On August 4, 1967, Levi applied for transfer of the physical examination, pursuant to 32 CFR § 1628.14, by completing SSS Form No. 230 at Local Board No. 5, 205 East 42nd Street in New York City. The transfer was approved by Local Board No. 5 the same day.

Under date of August 4, 1967, Levi wrote to the Local Board requesting a "dependency form in reference to my reclassification". The Local Board mailed SSS Form No. 118, Dependency Questionnaire, on August 8, 1967.

On August 17, 1967, the dependency questionnaire completed by Levi was received by the Local Board. In the questionnaire, Levi states in substance that he lives at 1407 New York Avenue in Brooklyn with his parents; that he is employed as a stock clerk by Honeywell Electronic Data Processing Inc. in New York City at a salary of $77.00 per week; that he furnishes $120 per month to his mother who is dependent upon him for support; that his father furnishes 35% of his mother's support; that he pays the rent on the apartment of $150 per month; that he pays $31 per month on a charge account at a clothing store; that he owns a car not used in connection with his employment; and that his father, who suffered a stroke the year before and is no longer able to work, receives $250.30 monthly from a disability pension and from social security. In the space provided on the dependency questionnaire for a

statement of the dependent, Levi's mother states that she is unable to work because she is suffering from hypertension.

Under date of September 1, 1967, the Local Board advised Levi that they had not yet reached a decision in his case and requested a signed statement from a physician "relative" to the physical condition of his father and mother, together with an affidavit from both parents "stating the amount of help they receive from you, etc."

Levi then submitted to the Local Board two letters from Dr. Wilfrid Desir to the effect that the mother is under the doctor's care for hypertensive cardiovascular disease and the father for hypertensive cardiovascular disease and left hemiparesis following a stroke in April of 1966. Levi later submitted to the Local Board a signed but unsworn letter of his mother. In the letter, his mother states that the husband suffered a stroke in April of 1966; that he is presently unable to work; that he receives disability social security in the amount of $110.30 per month and "Longshoremen" of $140 per month; that she is unable to work and that Levi gives her $30 per week to help support the family.

On November 8, 1967, Levi was found physically qualified for military service. A "statement of Acceptability", DD Form No. 62 was mailed to him on January 3, 1968.

Under date of January 17, 1968, the Local Board notified Levi that his claim for a hardship deferment had been reviewed on January 16, 1968 and that the board members "are of the opinion that your file does not contain sufficient evidence to warrant a deferment based on hardship". Levi was further advised that he would remain in Class I–A.

On January 22, 1968, the Local Board mailed to Levi SSS Form No. 252 ordering him to report for induction in New Orleans on February 21, 1968.

On January 25, Levi applied for transfer of his induction (32 CFR 1628.14) by completing SSS Form No. 230 at Local Board No. 5 in New York City. The transfer was approved by Local Board No. 5 the same day.

Under date of February 5, Levi wrote the Local Board notifying them that he had requested a transfer of his induction and repeating substantially all of the grounds previously advanced in support of his request for III–A classification (hardship). In addition, Levi enclosed a copy of parts of his apartment lease indicating a monthly rent of $135; he also disclosed for the first time that he has two sisters and a brother, none of whom contribute anything to the support of his parents. One sister and the brother are from his father's previous marriage; the other sister has a family of her own. (Presumably this full sister is the same sister listed by Levi on the Classification Questionnaire completed in January of 1965 as the only member of the registrant's family other than his parents.) The letter concludes by requesting an appeal of his classification.

Under date of February 8, the Local Board advised Levi that he had no right of appeal. In sending a copy of this advice to the Transfer Board in New York, the Local Board stated to the Transfer Board: "Please process this man for induction at the earliest possible date."

At about this time Levi consulted counsel.

On February 16, the Transfer Board in New York mailed to Levi SSS Form No. 253 ordering him to report for induction on March 4, 1968 at 39 Whitehall Street. Levi did not report for induction on March 4 as ordered.

Evidently there were efforts to help Levi by a member of Congress, who suggested submission of further evidence.

Under date of March 15, Levi wrote a further letter to the Local Board, sending also a March 12 letter from the doctor giving more details as to the physical condition of the father and mother. There was also submitted to the Local

Board a letter of Levi's father, dated March 7.

Under date of April 16, the Local Board notified Levi that they had again reviewed his file, that his classification had not been reopened, that the January 22, 1968 Order to Report for Induction remained in effect, and that Levi should report for induction.

Under date of April 25, the Transfer Board in New York directed Levi to report for induction at 39 Whitehall Street on April 29. As already noted, Levi reported as directed, submitted to induction and is currently in the custody of the Armed Forces.

When the Local Board classified Levi as I–A on January 18, 1967, it had very little information about the family circumstances.

The Board is directed to place in Class III–A "any registrant whose induction into the armed forces would result in extreme hardship * * * to his * * * parent * * * who is dependent upon him for support". 32 CFR § 1622.30(b).

The Board "may reopen" the classification of a registrant if "written information" is submitted "presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification". 32 CFR § 1625.2.

A substantial amount of information as to hardship in the family has been supplied the Local Board since January 18, 1967. This information was not before the Board and was not considered when the Board classified Levi as I–A.

If the Board were to reopen the classification of Levi, it must consider the new information and "again classify the registrant in the same manner as if he had never before been classified". 32 CFR § 1625.11. A new notice of classification must be mailed, which in turn gives rise to rights of personal appearance, of submitting further information, and of appeal within the System. 32 CFR §§ 1624.1, 1624.2, 1625.13.

By refusing to reopen the classification of Levi, the Board has deprived him of the useful and significant rights enumerated.

■ If the information submitted by Levi after January 18, 1967 was "not frivolous" and presented "a prima facie case for a requested deferment", then refusal to reopen his classification was a denial of procedural due process and requires that this petition be granted. United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966).

■ It seems clear to me that the information submitted by Levi was "not frivolous" and did present a prima facie case for the hardship deferment he was requesting.

Levi showed that the income of his parents was $250.30 per month, that neither parent was physically capable of working and indeed that each was in poor health, and that no member of the family other than Levi was providing financial assistance. The Local Board concluded that the "some $250 per month income" which they stated would be increased to over $300 per month by an Army dependency allotment, should be sufficient for normal living.

The Local Board is required by 32 CFR § 1622.30(d) to consider any allowances payable to dependents of Armed Forces personnel in reaching a decision on a dependency claim. Here, however, the Local Board was mistaken in its assumption that an Armed Forces dependency allowance would be forthcoming in the case of Levi. In order for a parent to be entitled to a dependency allotment —referred to as a Class Q allotment— the parent must be dependent on the member of the Armed Forces for over one-half of his support. 50 App. U.S.C. § 2201; Army Regulations 37–104, para. 10321d(2). Where, as in the case of Levi, his father and mother are living together in the same household, the dependency of either is decided on the basis of their combined income and expenses, including pensions and social security. Army Regulation 37–104, paras.

10321d(1) (a), (6) and (8). Thus, since the pension of Levi's father provides for over one-half of the expenses of the home, Levi's mother cannot be considered a dependent of Levi "even though the care provided by her husband is not completely sufficient for her needs." Army Pamphlet 608–26, pp. 5–6.

Although not necessarily controlling, the United States Department of Labor, Bureau of Labor Statistics, has published statistics which indicate that, during January of 1968 when Levi's case was before the Local Board, nearly $4000 per year was required, after deductions for payment of income and personal taxes and occupational expenses, to support a family of two at a "modest but adequate 'level of living'" in the New York metropolitan area. See U. S. Dep't of Labor, The Interim City Worker's Family Budget, in Monthly Labor Review, vol. 83, p. 785, at 786–790, August 1960; U. S. Dep't of Labor, Consumer Price Index for Urban Wage Earners and Clerical Workers, New York, New York, Series A–01. There was nothing before the Board to contradict Levi's statement that the income of his parents is only about $3000 per year and that he furnishes financial support of at least $1440 per year.

If the support of Levi be taken away, his parents—after payment of rent—would be left with approximately $100 per month with which to satisfy all the remainder of their needs. This would seem clearly to constitute an "extreme hardship" to them.

Levi made a showing which entitled him to a reopening of his classification by the Local Board and to have it considered anew. Nothing said herein is intended to control the decision of the Board should the classification be considered anew. If the classification should remain I–A, Levi will have a right to appeal within the System and to have a judicial review, at least to see whether there is "no basis in fact" for the classification. 50 U.S.C.App. § 460(b) (3).

The petition is granted because the refusal to reopen the classification was a denial of procedural due process and the order for induction was invalid.

The relief sought by this petition is granted and Levi Jeremiah Wilkerson is ordered released forthwith from the Armed Forces and from the custody of respondent, without prejudice to whatever further classification procedures may be in order within the Selective Service System.

So ordered.