**UNITED STATES of America**

v.

**Raymond Arthur POLLERO, Defendant.**

**No. 68 Cr. 670.**

United States District Court
S. D. New York.

June 12, 1969.

for violation of 50 App.U.S.C. § 451. Specifically, defendant was charged with refusing to report to his Selective Service Board for instructions to proceed to his place of assigned employment for civilian work in lieu of induction. At the conclusion of the evidence, leave was granted to counsel for the submission of briefs which have now been filed. Accordingly, there follow the findings of fact and conclusions of law of this court.

## I.

On November 5, 1965 Pollero was classified I–O by his local Selective Service board. This classification followed defendant's submission of a completed Selective Service form 150 in which he stated that he "could not kill and in any way support it—or be governed by its advocates". (Gov't Ex. 4) Pollero did not appeal this I–O classification.

Accordingly, on September 12, 1966 the Board mailed to him form 152 which requested Pollero to supply three types of civilian work which he might offer to perform in lieu of induction into the armed services. Pollero returned this form uncompleted, but submitted with the uncompleted form a letter in which he said, among other things, that, "I am going to be ordained as a minister with Jehovah's Witnesses soon and begin the Pioneer Work". (Gov't Ex. 18) Furthermore, Pollero in that letter stated clearly that he intended to refuse to perform "any and all" civilian work. On or about September 30, 1966, the Board received from Pollero form 127 in which he listed his occupation as a telephone solicitor for a carpet company. Pollero left blank that portion of the form ("Series V–Education") wherein registrants are supposed to set forth information as requested if they are at the time full-time students. Curiously, on October 3, 1966, another form 127 was received by the Board from defendant who again left blank "Series V–Education", but stated in "Series IV–Present Occupation" that he was a "telephone solicitor also: student; Columbia School of Broadcasting."

Robert M. Morgenthau, U. S. Atty., Southern District of New York, by Maurice McDermott, Asst. U. S. Atty., for the United States.

Legal Aid Society of New York, by Lawrence Welsch Kessler, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TYLER, District Judge.

Defendant was tried on April 3, 1969 before the undersigned without a jury

As a result of these developments, the Board on October 12, 1966 wrote Pollero and offered three specfic types of civilian work to him. In response to this letter, Pollero wrote back under date of October 21, 1966, the following letter:

"I realize the importance of having selective service laws and, where one has been found a sincere conscientious objector, the provisions for employment for 2 years at a job which is of benefit toward the national welfare.

I am classfied I–O and now been ordered to perform work given me by you, in accordance with the laws. I must refuse.

In 1963 (January) I began a personal investigation of religion to find one I could really believe and even take vows as a minister. In April of '65 I began studying with a minister of Jehovah's Witnesses. I soon found this to be the thing I was looking for. * * *

I am now in my 2nd year of study and attend all the *instruction* meetings (5 a week) and am enrolled in the Theocratic Ministry School. * * *

I will soon be ordained as a minister dedicating my life to *God*. Do you know what this means—dedicate? It is not just completing some course which covers a set period of time. It means that *everything* in my life will be toward the interest of preaching & teaching about God's Kingdom * * *

* * * I'm not asking for draft classification, freeing me from 'hospital-type' work for a cheap way out.

How much more could I do to serve my fellow man and this country than help people find truth and peace of mind *and* hope for everlasting life? * * * Well this is what I ask—that I may help my fellow man by preaching and teaching him. * * *

I will be very happy to explain my feelings and the Bible's to the Board * * *." (Gov't Ex. 23)

Thereupon, the Board sent a request to Pollero to appear before it on December 6, 1966 for the purpose of choosing civilian work for him to perform. To this, Pollero responded that he would be unable to attend on December 6th and added that he was planning to move to Paris, France to engage in the Pioneer Ministry after his baptism in March 1967. (Gov't Ex. 28) He further suggested that he might be willing to appear before the Board in May 1967.

Consequently, the Board ordered Pollero to report on February 9, 1967 for instructions to report to a place of employment designated by the Board.[1] On February 8, 1967, the Board received a letter from Pollero in which he stated that he was without sufficient funds to come to New York. (Gov't Ex. 44) As might be expected, defendant failed to report on the following day February 9, 1967 as ordered. (Gov't Ex. 45) Finally, the proof shows that Pollero is now engaged as a Pioneer in Jehovah's Witnesses.

## II.

Most defendants in selective service cases who admit failing to report, as does Pollero, attempt to utilize one of two defenses: either (1) that the induction or order to report for civilian duty was illegal because there was no basis in fact for the classification which they received or (2) that the local board failed to reopen their classification upon learning facts which establish a *prima facie* basis for a new classification.[2] Defendant claims that the second defense is applicable to him, that he was denied procedural due process by the failure of his local board to reopen his classification.[3]

---

1. This action was taken only after consultation with higher authorities within the selective service system, some of whom reviewed the defendant's file.

2. Defendant also raises the "defense" that he had insufficient funds for travel to

report as ordered. I regard this as both factually and legally unpersuasive.

3. There is little doubt, at least in this circuit, that a wrongful failure to reopen a classification is a denial of a substantial right, since reopening affords a right

More precisely, he argues that at the time the local board sent him the order of January 20, 1967, the board was in possession of factual statements which, if true, would have entitled Pollero to a classification of IV–D as a full-time student in a theological seminary. It should be indicated that defendant does not argue that he knew at that time that he was entitled to a reopening of his classification, nor does he argue that the local board could not have properly disallowed such a classification if it had fully complied with proper procedures. He does argue that facts which came to the attention of the board in letters he sent in response to communications from the board mandated a reopening of his classification.

■■ The regulation which permits the local board to reopen a registrant's classification is 32 C.F.R. § 1625.2, which states in pertinent part:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification. * * *"

Judicial gloss on this section of the regulations indicates that the discretion of the board to reopen is not completely un-bounded. As the Court of Appeals for the Second Circuit put it:

"Though the language in the regulation is permissive merely that does not mean that a local board may refuse to reopen arbitrarily, but requires it to exercise sound discretion. That, in turn, requires, when the basis of an application is not clearly frivolous, an inquiry designed to test the asserted facts sufficiently to give the board a rational base on which to put decision." United States v. Vincelli, 215 F.2d 210, 212–213, reh. denied 216 F.2d 681 (2d Cir. 1954).

Defendant argues that the local board arbitrarily refused to reopen his classification or, more accurately, that it did not reopen his classification as was required even in the absence of a specific request by him for a reclassification.[4]

■ The precise legal standard by which the inaction of the board must be evaluated is somewhat difficult to articulate except to state that the board must act or inquire further if it learns of, in the words of the regulation, "facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification." 32 C.F.R. § 1625.2. Previous cases have indicated that this means the facts presented must not be "frivolous", United States v. Vincelli, supra, at 212–213, and must present a prima facie basis for the new classification, United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y. 1966). See United States v. Gearey, 379 F.2d 915, 922, n. 11 (2d Cir. 1967); United States ex rel. Wilkerson v. Commanding Officer, 286 F.Supp. 290, 294 (S.D.N.Y.1968).

to a personal appearance and a right to appeal an unfavorable determination. United States v. Burlich, 257 F.Supp. 906, 910 (S.D.N.Y.1966).

4. I do not consider it significant that Pollero did not indicate in so many words that he was seeking a IV–D classification. The local board was on notice that Pollero intended to refuse civilian employment and that he sought its aid in allow-ing him to proceed to become a Pioneer. Only a reclassification from his I–O status could accomplish what defendant sought, and the personnel at the local board were well aware of that fact. Where the registrant has not purposely or negligently declined to request a reclassification, the standards binding the board are no different than they would be had the registrant specifically asked for the reclassification.

■ Defendant's guilt or innocence, then, turns on whether the new facts presented to the board amounted to a *prima facie* basis for a IV–D classification.[5] The standards for this classification appear in 50 App.U.S.C. § 456(g), which states in pertinent part:

"Regular or duly ordained ministers of religion, as defined in this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix], and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, * * * shall be exempt from training and service (but not from registration) under this title. * * * *"

One testimonial development at trial facilitates the inquiry considerably. Upon questioning, Mrs. Kathryn Broadhurst, an administrative assistant in the New York City legal division of Selective Service and the government's only witness, testified the "Pioneers" of Jehovah's Witnesses are normally classified IV–D as "regular or duly ordained ministers of religion as defined in [50 App.U.S.C.]." Accordingly, it must follow that if the other requisites of the divinity student clauses of Section 456(g) are satisfied by the facts known to the local board, Pollero was a "student preparing for the ministry" and entitled to the IV–D classification. Further, I take judicial notice of the fact that the Jehovah's Witnesses are a "recognized church or religious organization" as that term is used in Section 456(g).

The ultimate question is whether the facts before the board *prima facie* indicated that Pollero was "satisfactorily pursuing [a] full-time course of instruction in [a] recognized theological or divinity school * * * *". At the time in question, the local board was aware of two facts which, although not new, bear on the question at hand. First,

it was aware that Pollero was a sincere conscientious objector on the basis of his religious beliefs since it had adjudged him entitled to the I–O classification. Second, it learned through recent answers to its questionnaires that defendant was employed as a telephone solicitor for a carpet company.

At the time immediately prior to issuance of the order to report, the local board had received three recent letters from defendant concerning his religious training and plans to become a minister. (Gov't's Exhibits 18, 23 and 28). In these letters defendant claimed that he had been looking for a religion to which he could faithfully adhere and take vows as a minister; that he had found that religion—Jehovah's Witnesses; that he was attending the Theocratic Ministry School; that he was attending five instruction sessions a week; and that he was going to become a Pioneer in May 1967.

■ The first difficulty is whether these facts indicate that Pollero was studying "full-time" to become a Pioneer. It seems to me that the least that can be said is that the local board should have inquired further as to the nature and extent of defendant's studies. *Cf.* United States v. Bartelt, 200 F.2d 385, 388 (7th Cir. 1952). In so deciding, I have kept in mind that defendant may not have been aware that a IV–D classification was theoretically available to him, and that the Selective Service process is not an adversarial process, see United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3d Cir. 1953). If there is any safe principle in selective service cases, it is that factual questions of this type must be determined by the local board. Accordingly, I specifically decline to evaluate the statements made by Pollero on this point except to say that had the board determined that he was working "full-time" based on these statements I could not find there was "no basis in fact" for the determina-

5. It should be noted that IV–D registrants are not required to perform civilian duty in lieu of induction into the armed services. 50 App.U.S.C. § 456(g).

tion. In this instance the board, perhaps through inadvertence, failed to consider in any way whether the attendance at five sessions per week were sufficient to meet the requirement of "full-time" study of Section 456(g). It could have done so at a minimum of expense and bother.

 One final problem remains. Pollero claimed attendance at the Theocratic Ministry School. There was no indication at trial as to whether this institution is a "recognized theological or divinity school" as is required by the statute. Persons in the Selective Service System, including the government's only witness at this trial, may well have the expertise from dealing with Jehovah's Witnesses to know whether this institution would fit the description in the statute. If the local board had concluded, or perhaps even if the government had proved at trial, that it is well known this school did not meet the standards of the statute, I might have been persuaded that the facts presented to the board were insufficient to have warranted reopening of Pollero's classification. But in this, a criminal proceeding, I am constrained to hold that it was the government's burden to present facts on this matter as part of the prosecution.[6] See United States v. Freeman, 388 F.2d 246, 248–249 (7th Cir. 1967) reh. denied (*en banc*) (1968). Since it did not, I must conclude that the local board failed in not at least inquiring as to the credentials of the Theocratic Ministry School.

 Accordingly, I am persuaded that defendant made facts known to the board that amounted to a *prima facie* basis for a classification under Section 456(g). Accordingly, he was classified illegally since he was denied procedural due process by the local board's failure to reopen. Thus, the order to report was void, and Pollero's failure to report was not a criminal act.

Accordingly, a judgment of acquittal of defendant should be entered in the records of this court.

---

6. I am well aware that in selective service classification procedures the registrant has the burden of showing that he is entitle to a IV–D classification. It is also true that when defending on the ground that a classification has no basis in fact because registrant was entitled to a IV–D, the registrant has an even heavier burden. But in the posture of this case, where the local board never considered the possibility that defendant was entitled to a IV–D classification, the government should now have the burden on this question.