**UNITED STATES of America,**
**Plaintiff,**

v.

**Bernard Anthony REEVES, Defendant.**

**Crim. No. 70–174.**

United States District Court,
M. D. Florida,
Tampa Division.

Feb. 1, 1971.

John L. Briggs, U. S. Atty., Hugh N. Smith, Asst. U. S. Atty., Tampa, Fla., for plaintiff.

John D. Shofi, of Hardee, Ott & Hamilton, Tampa, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KRENTZMAN, District Judge.

### FINDINGS OF FACT

Defendant Bernard Anthony Reeves was born July 13, 1943. In June 1962 he registered with Selective Service Local Board Number 116, Tampa, Florida (hereinafter Board). In the section of the Classification Questionnaire (SSS Form 100) marked "Statement of Registrant," defendant Reeves wrote: "I Bernard Anthony Reeves plan to enter Morris Brown College to study and prepare for the ministry." On April 8, 1963, the Board processed a Request for Duplicate Registration Certificate (SSS Form 6), submitted by defendant. The minutes of the Board indicate that also on that date "registrant [was] informed as to the qualifications of class 4–D minister[;] basis to be furnished later, possibly Oct."

In October 1963 the Board received a Student Certificate (SSS Form 109)

from Edward Waters College, Jacksonville, Florida, indicating that defendant was presently enrolled at that institution. As a consequence defendant was reclassified 2–S on October 16, 1963. In December 1964 defendant returned to the Board a Current Information Questionnaire (SSS Form 127). In the section of the Questionnaire marked "Present Occupation," defendant wrote: "Local Preacher. Assist the Pastor of my church. A.M.E. Church." He declared his business to be "[t]o preach the gospel and win souls for Christ." Under "Education," defendant wrote: "I am working to return to Edward Waters College to further my education [in]. English and Theology [preparing for] ministry and teacher [teaching]." On December 21, 1964, defendant was reclassified 1–A.

On January 26, 1965, defendant was ordered to report for a physical examination to take place on February 25, 1965. Defendant took the physical but was found morally unacceptable because of a November 1962 conviction in Tampa Municipal Court. Defendant returned another Current Information Questionnaire to the Board on May 13, 1968. On July 17, 1968, he was ordered to report for a physical examination to take place on July 29, 1968. Following the examination, defendant was found to be acceptable for induction. On September 25, 1968, defendant was ordered to report for induction into the armed forces on October 16, 1968. Although he received the induction order, defendant did not report.

On October 15, 1968, the day before he was scheduled to report for induction, defendant visited the offices of the Board and spoke to a clerk there. Defendant inquired about a ministerial exemption. The clerk told him that he would need certain papers and directed defendant to obtain a letter from his minister. When defendant returned with a letter from his pastor,[1] the clerk called Rev. Everett's wife, who stated that defendant only worked part-time as a minister. The clerk then told defendant that to obtain a ministerial exemption he would have to be a full-time minister. When defendant asked if there was anything he could do, the clerk replied it was too late to obtain an exemption and that there was nothing defendant could do. After defendant left, the clerk filled out a Report of Oral Information (SSS Form 119) and placed it in defendant's file. The Report reads:

> "Call home of Rev. Everett—talked to the wife of Rev. Everett and she advised he only help out the Rev. part-time."

The minutes of the Board for October 15, 1968, state: "Ltr brought in by reg re ministry—SSS Form 119 exec[.]"

In November 1968 the Board declared defendant delinquent. His file was forwarded to State Headquarters for review. In December 1968 State Headquarters authorized the Board to turn defendant over to the United States Attorney for prosecution, which was done that same month. On December 19, 1968, defendant executed a Current Information Questionnaire.[2] In the section entitled "Present Occupation," defendant wrote: "Asst. Pastor of Church, I also work in irrigation [sic] putting pipes in ground for irrigation." He also stated that he had "[j]ust started" his job.

On January 28, 1969, the Board sent defendant a letter ordering him to report for induction on February 6, 1969. The letter was never delivered to defendant. It was returned to the Board marked "Unclaimed" and "Returned to Sender" on February 12, 1969. It was the defendant's undisputed testimony

---

1. The letter stated: "This is to certify the Bernard A. Reeves is affilliated with Evening Star, as a minister.
 Pastor Rev. E. H. Everett
 3913 E. Powhatan
 237–1741 (Home)".

2. Defendant executed this form in the Board's offices where he had been brought by an agent of the Federal Bureau of Investigation.

that he never received the letter and that he was never even aware of its existence. Defendant testified that although the envelope was addressed to his correct address he never got it because he was in the Tampa City Jail at the time. The parties stipulated as a matter of evidence that defendant was sentenced to a $300 fine and 30 days in jail by the Tampa Municipal Court on February 5, 1969.

In April 1969 defendant was again turned over to the United States Attorney for prosecution. Defendant was charged with violating the Military Selective Service Act of 1967 and jailed.[3] In December 1969 defendant consented to submit to induction. On January 12, 1970, a letter ordering defendant to report on January 15, 1970, was issued by the Board and personally delivered to defendant (who was in the Hillsborough County Jail) by a Special Agent of the Federal Bureau of Investigation.

■■ Defendant duly reported to the Armed Forces Induction Station in Jacksonville on January 15, 1970. During the physical examination which precedes all inductions into the armed forces,[4] defendant was found to have high blood pressure; he was given a one-month disqualification. Defendant was told by personnel at the station that he could either stay and be retested the next day or return home and be examined by his personal physician. Defendant chose the latter alternative, but as he was waiting to board the bus home he was told that he would have to stay overnight and be retested the next day. When defendant returned to the station the following day he waited for several hours, and was asked several times why he was there. Each time he replied that he was waiting for another blood examination.

Finally defendant's blood pressure was tested by a physician who, after taking three readings, stamped defendant's papers to indicate that he was qualified. The examining physician then told defendant to take the papers around to the physician in charge who signed the papers and certified that defendant was qualified for military service. At this point, defendant left the station without telling anyone that he was leaving. He testified that he believed the physical examination was over. There is a dispute about whether he left his papers at a desk or took all or some of them with him.

On January 21, 1970, the Board received a Delivery List (SSS Form 261) from the examining station. The List stated that defendant had "eloped"; it did not specify whether defendant had eloped from induction or from the physical examination that preceded it. Also, on Januuary 21, 1970, a clerk of the Board filled out a Report of Oral Information:

"Called Exam Stat re Form 261 rec'd this date. Registrant reported on 1–15–70 and was held over because of hypertension. When it was taken later, and the registrant was informed that he was qualified, he absconded with his records. The Sgt in charge immediately called State Hdqtrs and spoke to Mrs. Schuler. All above info was relayed to her."

This prosecution followed. The information was filed July 31, 1970. The case was tried to the Court on December 14, 1970.

## CONCLUSIONS OF LAW

*Count 1.*

■■■ Count 1 of the information alleges that in violation of 50 U.S.C. App.

---

3. The Court file shows that defendant was appointed an attorney by the United States Commissioner on November 10, 1969. Defendant remained in jail until January, 1970.

4. Although there is no Selective Service Regulation explicitly requiring it, the Reg-

ulations imply that registrant is to be given a physical examination immediately prior to being inducted into the armed forces. It follows that an order to report for induction must be construed to include an order to submit to a physical examination prior to induction.

§§ 456(j) and 462(a)[5] defendant knowingly and willfully failed to report for induction on October 16, 1968, as required by the Board's order of September 25, 1968. It is clear that defendant received notice of the induction order; it is also clear that defendant failed to appear for induction. Therefore, defendant can avoid conviction on this Count only if the September 25, 1968 order was invalid,[6] and that order was invalid only if defendant was denied "procedural safeguards crucial to the maintenance of basic fairness." United States v. Freeman, 388 F.2d 246, 248 (7 Cir. 1967).

The Selective Service Regulations[7] provide that no classification is permanent. 32 C.F.R. § 1625.1(a). Every registrant, after his classification is determined by his local board, has the right to appear in person before the board. 32 C.F.R. § 1624.1(a). A registrant may appeal his classification to an appeal board, 32 C.F.R. § 1626.2(a), and in some cases to the President of the United States. 32 C.F.R. § 1627.3. With regard to the reopening of classifications, the Regulations provide:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when registrant was classified, which, if true would justify a change in the registrant's classification; * * * provided * * * [that] the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2.

If a local board decides to reopen a registrant's classification,

"it shall consider the new information which it has received and shall again classify the registrant in the same manner as if he had never before been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the classification he was in before his classification was reopened." 32 C.F.R. § 1625.11.[8]

Where a local board has reopened a registrant's classification and classified him

---

5. The Military Selective Service Act of 1967 is comprised of 50 U.S.C.App. §§ 451–473. 50 U.S.C.App. § 456(j) relates to conscientious objectors. 50 U.S.C.App. § 462(a) makes it an offense to knowingly fail or neglect to perform a duty required to be carried out by the Act or regulations promulgated under the Act's authority.

6. A local board order is invalid if it is unlawful—that is, if it is issued in contravention of the rules and regulations defining the jurisdiction of the board. No person can be penalized for disobeying an invalid order of a local board. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Actions or orders of a board which are basically lawless are also invalid. Oestereich v. Selective Service Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Breen v. Selective Service Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed. 2d 653 (1970).

7. Under the authority of 50 U.S.C.App. § 460(b) the President of the United States is granted the power to prescribe necessary rules and regulations to carry out the provisions of the Act. These regulations are codified in the Code of Federal Regulations.

8. There is an important difference between a refusal to reopen and a reopening of a registrant's classification followed by registrant being placed in the same classification as he was prior to the reopening.
"Whether or not a registrant is ultimately reclassified, the decision by the local board to reopen or not to reopen his classification is a separate determination of independent procedural significance. As the Ninth Circuit pointed out in Miller v. United States, 388 F. 2d 973 (9 Cir. 1967), the Regulations do not permit the Board to evaluate a request for reclassification on its merits until it first determines whether the information submitted by the registrant

anew, the registrant has the same rights to a personal appearance before the board and to appeal as in the case of his original classification. 32 C.F.R. § 1625.13. The reopening of a classification cancels any outstanding order to report for induction. 32 C.F.R. § 1625.14.

Refusal to reopen is governed by the provisions of 32 C.F.R. § 1625.4:

"When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required."

The Military Selective Service Act of 1967 provides for ministerial exemptions in the following words:

"Regular or duly ordained ministers of religion, as defined in this title, * * * shall be exempt from training and service (but not from registration) under this title." 50 U.S.C. App. § 456(g).

■■■ A "duly ordained minister of religion" and a "regular minister of religion" are defined as follows:

"The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, * * * to preach and to teach the doctrines of such church, sect, or organization and to administer the rights and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization." 50 U.S.C.App. § 466(g) (1).

"The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister." 50 U.S.C.App. § 466(g) (2).

"The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained as a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization." 50 U. S.C.App. § 466(g) (3).[9]

---

requires reopening. The Board may not consider 'the situation upon its merits, and then * * * accord to its classification result the status of a denial merely of the claimant's motion to reopen.' " Robertson v. United States, 404 F.2d 1141, 1146 (5 Cir. 1968).

9. These provisions regarding ministerial exemptions are to be construed liberally. Fitts v. United States, 334 F.2d 416, 419 (5 Cir. 1964). In determining whether a registrant is entitled to a ministerial exemption, the Courts are to consider (a) whether the registrant has the ministry

32 C.F.R. § 1622.43 provides that regular or duly ordained ministers of religion, as defined by the Military Selective Service Act of 1967, shall be classified as 4–D. Persons classified as 4–D are not subject to induction.

Defendant contends that the September 25, 1968 induction order was invalid because the Board violated his rights to due process when it failed to consider his request for a ministerial exemption. Accordingly, the Court must determine (a) whether defendant did in fact file the written request for a reopening envisioned by the Regulations, and, assuming that the answer to (a) is in the affirmative, (b) whether the Board violated defendant's rights by failing to entertain the request.

Registrants have no constitutional right to be represented by counsel when dealing with local boards. United States v. Willis, 409 F.2d 830 (5 Cir. 1969); Merritt v. United States, 401 F.2d 768 (5 Cir. 1968). They are forbidden to have counsel in proceedings before local boards. 32 C.F.R. § 1624.-1(b). It follows that registrants cannot be presumed to have a working knowledge of the intricacies of the Military Selective Service Act of 1967 or the regulations promulgated thereunder. "Registrants are not thus to be treated as though they were engaged in formal litigation assisted by counsel." United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3 Cir. 1953). Local boards should construe all registrants' communications liberally, and this means that a letter from a registrant may be sufficient to constitute a request for a re-

opening of classification. United States v. Hasmuk, 419 F.2d 929, 930 (7 Cir. 1970).

32 C.F.R. § 1625.2, quoted above, permits local boards to reopen and consider anew a registrant's classification "upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified." This regulation means two things. First, the local board must consider—that is, either grant or deny—any written request for a reopening.[10] Second, the board is required to reopen the registrant's classification only if the request presents a *prima facie* showing of entitlement to a new classification.[11] The circumstances of his visit to the Board's offices of October 15, 1968, make it manifest that defendant's letter from his pastor was presented for the purpose of obtaining a reclassification, and the letter must be considered a written request for reopening. The request constituted a *prima facie* case for reclassification; it contained significant facts not hitherto considered by the Board and not refuted by the file—namely, that defendant was affiliated as a minister with a religious organization known as Evening Star. It was defendant's first request for a ministerial exemption made against a background of prior religious activities.

Another reason why the letter from defendant's pastor must be construed as a request for reopening is that it was submitted at the direction of the Board clerk. Defendant came into the Board's offices and inquired about a ministerial

as a vocation rather than as an avocation, (b) whether religious affairs occupy a substantial part of the registrant's time and are carried on with regularity, and (c) whether the registrant stands in the relation of a minister to a congregation. *Fitts v. United States,* supra at 421. The Act does not require that a minister earn his livelihood from the ministry or from a particular congregation, or that he have a pulpit before he can receive a ministerial exemption. Pate v. United States, 243 F.2d 99 (5 Cir. 1957). Persons entitled to a

ministerial classification may engage in secular work in order to earn sufficient funds to carry out their religious work. Wiggins v. United States, 261 F.2d 113 (5 Cir. 1957).

10. *United States v. Shermeister,* 425 F.2d 1362 (7 Cir. 1970); Davis v. United States, 410 F.2d 89 (8 Cir. 1969); Robertson v. United States, *supra.*

11. United States v. Pollero, 300 F.Supp. 808 (S.D.N.Y.1969); United States v. Gearey, 379 F.2d 915 (2 Cir. 1967).

exemption. He was told that he would need a letter from his pastor, which he obtained. The letter he brought in was the paper he had been told to secure if he wanted a ministerial exemption. In the circumstances of this case it is difficult to see how the government can deny that the defendant properly applied for a ministerial exemption, when defendant made the application in the manner prescribed by the Clerk of the Board who was operating out of the offices of the Board.[12]

The next question is whether the Board violated defendant's right by failing to rule upon the ministerial exemption request. Certainly the Board never considered the request. The undisputed facts are that after defendant left the Board's offices, having been told by the clerk that there was nothing he could do, the clerk executed a Report of Oral Information and filed away the pastor's letter.

The request for reopening was not brought to the Board's attention. There is nothing in the record to indicate that the Board ever considered the request or knew of its existence. The minutes of the Board after October 15, 1968 fail to disclose that the Board ever voted upon the request. The subsequent orders to report for induction were mailed without defendant's request having been acted upon. Although 32 C.F.R. § 1625.4 requires local board refusing a request to reopen to advise the registrant by letter that the request has been denied and to place a copy of the letter in the registrant's file, neither was done in this case.

It is true that in the absence of any evidence to the contrary, it must be presumed that a local board performed its duty because of the legal presumption of regularity which attaches to such official proceedings. United States v. Isenring, 419 F.2d 975 (7 Cir. 1969); Yeoman v. United States, 400 F.2d 793 (10 Cir. 1968); Greer v. United States, 378 F.2d 931 (5 Cir. 1967). In the instant case, however, the presumption has been overcome, for two reasons. First, it is perfectly clear what happened; the clerk acted as Board, appeal board, and President. She told the defendant what was needed to apply for a reopening of his classification; she examined the paper he brought in and checked it out by calling the pastor's wife; and after she had unilaterally determined the request to be meritless, she told defendant there was nothing more to be done and filed the request away without referring it to the Board. The danger of such proceedings has been recognized by other courts. In a related situation where a local board clerk filed a request for reopening without referring it to the Board, the court said:

> "We would say that clerks file such communications without calling them to the board members' attention at considerable risk to the validity of subsequent proceedings. Appellant is quite right in pointing out that unilateral prior determination by a clerk that a communication is not a written request for classification reopening could effectively deprive a board of its responsibility to use its judgment." United States v. Stoppelman, 406 F.2d 127, 130–131 (1 Cir. 1969); cf. Unit-

---

12. This Court may take judicial notice of the fact that a registrant's Notice of Classification (SSS Form 110), which a registrant is required to have in his personal possession at all times, 32 C.F.R. § 1623.5, states in large capital letters: "FOR INFORMATION AND ADVICE, GO TO ANY LOCAL BOARD." United States v. Powers, 413 F.2d 834, 837 (1 Cir. 1969).

If this Court were to hold that the letter did not constitute a request for re-

opening it would also be forced to hold that defendant was deprived of due process to the extent that the induction order was invalidated. An induction order is invalid if a registrant is deprived of his procedural rights due to misleading information provided by a Selective Service employee or official. United States v. Powers, supra; Powers v. Powers, 400 F.2d 438 (5 Cir. 1968).

ed States v. Burns, 431 F.2d 1070 (10 Cir. 1970).

■ Since the record shows that the Board clerk assumed functions vested by law in the Board, the presumption has been overcome.

■ The second reason that the presumption has been overcome lies in the position of the government in this case. At trial it was the consistent position of the United States that defendant had never been granted a ministerial exemption because he had never applied for one. It follows that the government must agree that the Board could not consider a request that had never been made. The United States cannot contend both that defendant had never applied for a ministerial exemption and that the Board considered defendant's request for a ministerial exemption.

■ The failure of the Board to even consider the request violated defendant's rights. "A duty rests upon the Board, when it receives any written request to reopen a registrant's classification, to either reopen or refuse to do so." United States v. Norman, 412 F.2d 629, 631 (9 Cir. 1969). The Board violated defendant's rights when it breached this duty, for defendant had the right to have the request considered. 32 C.F.R. § 1625.4.[13]

The Board's failure to consider the request was not harmless error. If defendant's request had been granted, the outstanding induction order would have been cancelled, and defendant would have had a right to a personal appearance before the Board and to appeal his classification anew. It is not for the Court to decide defendant's correct classification. "A court has no place in the classification process." United States v.

Shermeister, *supra,* 425 F.2d at 1363. Proper classification of registrants is a matter for local boards, but they cannot make proper classifications unless they are aware of and rule upon requests for reopening of classifications. The issue before the Court is not whether defendant ought to have been reclassified, but whether his right to have the Board at least look at and consider his request for reclassification was violated. The Court has before it a situation where a registrant filed a request to reopen his classification showing a *prima facie* entitlement to a new classification and his local board never considered it.[14] In view of this it is impossible for the Court to say that defendant was not harmed by the failure of the Board to act upon his request.

■ Since the Board failed to adhere to its own Regulations to the detriment of plaintiff, the induction order of September 25, 1968 was invalid. Estep v. United States, *supra.* A defendant cannot be guilty of an offense when he disobeys an invalid induction order, Estep v. United States, *supra,* and consequently defendant is not guilty on Count 1.

*Count 2.*

■ Count 2 charges that on or about February 6, 1969, defendant knowingly and willfully failed to report for induction, as required by the Board's letter mailed to defendant on January 28, 1969. Defendant is clearly not guilty of this charge. The undisputed evidence shows that defendant never received the January 28th order and was never even aware of its existence. Defendant lacked knowledge of the order to report, and therefore cannot be guilty of willfully and knowingly failing to obey the order. Simply put, the evidence is

---

13. See footnote 10 *supra.*

14. Although the Court finds that the October 15, 1968 request for reopening did set forth a *prima facie* case for reopening, the holding of the Court is not dependent upon such a finding. Defendant is not guilty of this count if he shows that (a) he filed a written request for reopening, and (b) the Board never considered the request. Defendant has shown both. The essence of defendant's contention, then, is that the Board never entertained his request for reopening. Since the Court agrees that this contention is correct, defendant is innocent of this count. United States v. Shermeister, *supra,* 425 F.2d at 1363–1364.

insufficient to show criminal intent. *Cf.* United States v. Ebey, 424 F.2d 376 (10 Cir. 1970).

*Count 3.*

In the third count of the information it is alleged that on or about February 6, 1969, defendant knowingly and willfully failed to keep the Board advised of his address. The evidence is undisputed that on February 5, 1969, defendant was sentenced to a jail term by the Tampa Municipal Court. The address to which the January 28, 1969 induction order was mailed was defendant's correct home address, but defendant, who was in the Tampa City Jail from at least February 5, 1969 on, never received the letter or became aware of its existence.

 Defendant cannot be convicted on this count unless "[t]he record * * * support[s] the charge that, during this period, there was deliberate purpose on the part of [defendant] not to comply with the Selective Service Act or the regulation issued thereunder." Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953). "A registrant is not required to remain at one place or report to the board every move that he makes. The regulation is satisfied if a 'good' address is furnished." United States v. Ebey, supra, 424 F.2d at 377.

Since there was no evidence that he intended to avoid his obligations under the Military Selective Service Act of 1967, defendant is not guilty of knowingly and willfully failing to keep the Board advised of his address, as charged in Count 3. Cf. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960).

*Count 4.*

 The January 12, 1970, induction order was invalid for the same reasons the September 25, 1968 order was invalid.[15] The Board was under an obligation to consider defendant's request to reopen his classification, and the Board could not issue a valid induction order to defendant until it had considered that request.[16]

 It is well settled that a local board loses jurisdiction when it proceeds arbitrarily or without regard to the rights of a registrant. Robertson v. United States, 404 F.2d 1141 (5 Cir. 1968); Estep v. United States, *supra*; Niznik v. United States, 173 F.2d 328 (6 Cir. 1949); Smith v. United States, 157 F.2d 176 (4 Cir. 1946).

In Olvera v. United States, 223 F.2d 880, 882 (5 Cir. 1955), the Fifth Circuit said:

"* * * it is of the essence of the validity of board orders and of the crime of disobeying them that all procedural requirements be strictly and faithfully followed, and * * * a showing of failure to follow them with such strictness and fidelity will invali-

15. It would appear from the minutes of the Board that the only induction order ever issued defendant was that of September 25, 1968. The Board's letters of January 28, 1969 and January 12, 1970, directing defendant to report for induction, appear to be only reissuances of the September 25, 1968 order. Regardless of whether there were three orders or only one, the Board could not, in accordance with its own Regulations, enforce any induction orders until it had considered the request for reopening.

16. Between October 15, 1968 and January 12, 1970, the Board had no new information before it which would negate the request for reopening. The Question-

naire defendant filled out on December 19, 1968 stated that defendant was an assistant pastor of a church and worked laying pipes. This statement did not debar defendant from a ministerial exemption, since classification must be determined on the basis of particular facts, not blanket characterizations. Application of Kanas, 385 F.2d 506 (2 Cir. 1967) (Jewish cantor who co-officiated with rabbi at services of worship held entitled to exemption despite fact that his title was "cantor and musical director"). And as was stated above, persons with ministerial exemptions may in some cases perform secular work in order to support themselves. Wiggins v. United States, *supra*.

date the order of the board and a conviction based thereon."[17]

Defendant is not guilty of Count 4.

A judgment will be entered acquitting defendant on all counts and discharging him from custody.[18] This action is of course without prejudice to further proceedings before the Selective Service Board.

17. Defendant is also not guilty of this charge because the evidence does not show beyond a reasonable doubt that defendant eloped from a physical examination on January 15, 1970. Count 4 of the information alleges that defendant *refused to complete a physical examination;* it does not allege that defendant refused to submit to induction.

The only evidence that defendant eloped from his physical examination was testimony of an agent of the Federal Bureau of Investigation, who said that on June 24, 1970, defendant confessed to leaving the station after he had been told to go to another room for further examination. The agent did not take verbatim notes of the interview, however. Defendant testified that his physical examination was completed when he left, the chief physician having certified him as qualified for induction.

The Delivery List received by the Board on January 21, 1970, stated only that defendant had eloped—it did not specify whether from physical examination or from induction. The Report of Oral Information filled out by a Board clerk on January 21, 1970 states:

"Called Exam Stat re Form 261, rec'd this date. Registrant reported on 1-15-70 and was held over because of hypertension. When it was taken later, *and the registrant was informed that he was qualified, he absconded * * *.*"
(Emphasis supplied.)

18. Defendant has been in custody, unable to make bond, since June 24, 1970. The Court denied several motions to reduce bond or release on recognizance because of the fact that between January 15, 1970, when he left the induction station, and June 24, 1970, when he was arrested, defendant evaded prosecution by hiding out at various unspecified places in Tampa and St. Petersburg. Under these circumstances the Court was of the opinion that defendant's presence at trial could not be reasonably assured unless adequate security was filed with the Clerk of the Court.